Argued June 27, affirmed September 26, 1922.

# HANSEN–RYNNING, ADMR., v. OREGON–WASH-INGTON RAILROAD & NAVIGATION CO

(209 Pac. 462.)

**Evidence—Evidence as to Amount Received for Sale of Damaged Salmon Held Admissible on Question of Market Value.**

1. In an action for damages to several cases of salmon while in storage, evidence by plaintiff as to the amount received from the sale of the salmon while in the damaged condition was admissible on the question of market value.

**Warehousemen—Liable for Damage by Negligence to Goods Stored for an Agreed Compensation.**

2. Where warehouseman received and stored salmon for an agreed compensation, he became liable for any loss or injury to the same resulting through his negligence while in his possession.

**Warehousemen—Measure of Damages for Negligent Injury to Goods Stored.**

3. Where cans of salmon stored in defendant's warehouse became rusty from a leak in the roof, plaintiff was entitled to the expense incurred in a reasonable endeavor to remove the rust from the cans, as well as the difference between the market value at the place where the injury occurred on the date of their return to the owner in the condition the goods were in after such reasonable endeavor had been made to remove the rust and the market value at the same time and place if the property had been in good condition.

**Appeal and Error—Trial—Order of Proof is Within Discretion of Trial Court.**

4. The order of proof is always within the sound discretion of the trial court, and his rulings are not reviewable on appeal, in the absence of an abuse of the discretion.

**Evidence—Opinion may be Founded upon Facts Subsequently Stated.**

5. There was no error in permitting a witness to give an opinion based on facts not in evidence, where she subsequently stated all the facts upon which she based it.

**Evidence—Evidence of Witness in Former Trial cannot be Proved in Subsequent Trial, Where Witness is in the State and can be Subpoenaed, "Unable to Testify."**

6. Section 727, Or. L., providing that evidence given in a former trial may be proved in a subsequent trial, where the witness is deceased, or out of the state, or unable to testify, does not apply where a witness, though absent from the place of trial, is within the state and can be subpoenaed, as the words "unable to testify" refer only to the mental or physical inability of the witness.

Warehousemen—Required to Exercise Reasonable Degree of Care for Protection of Goods.

7.   While it is true that, in the absence of a contract or statute, a warehouseman is not an insurer of the safety of goods while in his care, yet he is required to exercise a reasonable degree of care for their protection, and is liable for any loss or injury resulting to the goods from his negligence or failure to exercise due care.

Warehousemen—Liable for Damage Resulting from Leaky Roof.

8.   A provision in a warehouse receipt that the warehouse would not be liable for any loss or damage from the elements does not relieve the warehouseman from liability for damages to salmon resulting from a leaky roof.

Appeal and Error—Instruction That Warehouseman is not Permitted to Allow Water to Reach Goods Through Walls or Floor Held not Prejudicial.

9.   In an action against a warehouseman for damage to salmon resulting from a leaky roof, the use of the words "walls and floor," in an instruction in connection with the word "roof" in designating the places from which a warehouseman would not be permitted to allow water to reach the goods in storage, was not prejudicial.

Warehousemen—Cannot Avoid Effect of Negligence of Employee by Delegating Duty.

10.   The duty incumbent upon the warehouseman to exercise reasonable care to protect goods stored could not be delegated to its employees so as to relieve the warehouseman from liability for damages resulting from the negligence of the employee and such duty was not discharged by merely instructing employees to exercise reasonable care.

Warehousemen—Instruction That if Warehouseman Used Due Care to Protect Goods, He is not Liable, Though There was a Leaky Roof, Held Properly Refused.

11.   In an action against a warehouseman for damage to salmon while in storage, an instruction that, if the warehouseman endeavored to protect the salmon and did those things which an ordinarily prudent man would do, plaintiff cannot recover, though there was a leak in the roof of the warehouse by which rain was let in on the salmon, was properly refused, in view of Section 8028, Or. L., relating to the liability of warehousemen.

Trial—Instruction on Damages Held not Erroneous as Improper Modification of Request.

12.   In an action against a warehouseman for damage to goods while in storage, adding to a requested instruction on the question of damages that if plaintiffs are entitled to recover at all, the verdict should be of such a character as to make them whole, so that they will not have sustained any financial loss by reason of the damage, but they are entitled to no more than that, *held* not erroneous, though not wholly pertinent to the instruction requested.

From Clatsop: JAMES A. EAKIN, Judge.

Department 1.

AFFIRMED.

For appellant there was a brief over the names of *Mr. C. E. Cochran* and *Mr. A. C. Spencer,* with an oral argument by *Mr. Cochran.*

For respondents there was a brief over the names of *Mr. Edw. C. Judd* and *Messrs. G. C.* and *A. C. Fulton,* with an oral argument by *Mr. Judd.*

RAND, J.—This action is for the recovery of damages claimed to have been sustained by plaintiffs through the alleged negligence of the defendant while acting in the capacity of a warehouseman, in permitting 6,995 cases of 48 cans each of canned salmon belonging to the plaintiff, then being stored in defendant's warehouse in Astoria, to become wet by reason of an alleged leak in the roof of the warehouse, causing the cans to rust and depreciating the market value thereof. The cause was tried by a jury, and from a judgment in favor of the plaintiffs the defendant has appealed. A former judgment in this cause was reversed by this court, and the opinion is reported in 97 Or. 190 (188 Pac. 963, 190 Pac. 655).

Defendant's first contention arises upon the admission over the objection and exception of the defendant of testimony concerning the value of the salmon in its alleged damaged condition, given by David Hansen upon the former trial, and proved upon this trial, he having died in the meantime. In answer to the question put to the witness upon the former trial, as to what was the market value of the salmon after the cans had become rusted and had been

reprocessed and reconditioned in the manner testified to by the witness, the witness had said: ''Well, that is more than I could say. All that I could get for it was $1.15.'' He had then been asked, ''That is all?'' and answered, ''That is all I could get for it, and I was glad to get rid of it.'' After this testimony had been offered upon the last trial, on motion to strike out the last answer, the court struck out that part where the witness said, ''I was glad to get rid of it,'' and left the remainder of the answer stand.

It is contended that the witness' statement that $1.15 was all that he could get for the salmon was not evidence of its market value.

1. While, as a general rule, evidence of a single sale is not admissible to prove market value, yet in a case like this, where the value of canned salmon has been depreciated by the rusting of the tins containing it, its market value in that condition is more difficult of proof than where the cans present a bright and attractive appearance, and we think that the answer of the witness has some evidentiary value, the weight and effect to be given to it being a question for the jury. It would therefore have been error for the court to instruct the jury to disregard the entire answer. As said in *Parmenter* v. *Fitzpatrick,* 135 N. Y. 190 (31 N. E. 1032), ''In the ordinary case of purchase and sale of property, the fact that the purchaser and seller have met and agreed upon a price and actually bought and sold the property at that price, ought to be, in the nature of things, some evidence of the value of that property which has thus changed hands in a *bona fide* transaction.''

''If there is no market,'' says Mr. Jones, in his Commentaries on the Law of Evidence, Volume 1,

Section 169, ''then the actual value may be proved, as, for instance, by what it sold for in a *bona fide* transaction.''

''If sales of property,'' says Mr. Sedgwick, ''are adduced as evidence of value, they should be sales in the regular course of business. But a sale of the very article the value of which is in question may be shown in evidence of its value, though the sale were a sheriff's sale; and therefore evidence of the cost of the goods is admissible, in connection with other circumstances. So where goods were damaged at sea, evidence of the price brought by the damaged goods at auction upon their arrival was held admissible.'' 4 Sedgwick on Damages, § 1298.

Ordinarily, market value is ''a price fixed by buyer and seller in an open market in the usual and ordinary course of lawful trade and competition.'' *Lovejoy* v. *Michels,* 88 Mich. 15 (49 N. W. 901, 903, 13 L. R. A. 770). ''This value 'is that reasonable sum which the property would bring on a fair sale by a man willing but not obliged to sell to a man willing but not obliged to buy.' '' 1 Sedgwick on Damages, § 245. Citing *Allen* v. *Chicago & N. W. Ry.,* 145 Wis. 263 (129 N. W. 1094).

2. The defendant was acting in the capacity of warehouseman, and received and stored the salmon for an agreed compensation, and as such was a bailee for hire, and became liable to the plaintiffs for any loss or injury resulting through its negligence to the salmon while in its possession.

3. The plaintiffs are entitled to a fair indemnity for the loss sustained· through the negligence of the defendant. This includes the expense incurred by plaintiffs in a reasonable endeavor to remove the rust from the tins, as well as the difference between

the market value at the place where the injury occurred on the date of their return to the owner in the condition the goods were in after such reasonable endeavor had been made to remove the rust and the market value at the same time and place of like property in good condition: *Hansen* v. *Oregon-Wash. R. & N. Co.,* 97 Or. 190, 201 (188 Pac. 963).

To determine the difference between the market value of a like quantity of salmon in good condition at Astoria, Oregon, at the time when the salmon was returned to the plaintiffs, and the market value of the salmon in question in its damaged condition when returned, it was necessary for the plaintiffs to offer the best testimony available to establish the market value of the damaged salmon. The witness had testified that he had endeavored to sell this damaged salmon to numerous dealers in salmon who had declined to buy because of the rusted condition of the cans, and that he had sold it to the only purchaser he could find, and for the best price he could obtain for it.

The City of Astoria, for a great many years, has been one of the principal markets for salmon on the Pacific Coast, and if canned salmon contained in rusty cans had a fixed, or well-known market value, and if the value was higher than the price for which the plaintiffs sold the damaged goods, evidence could easily have been obtained to establish such market value. Under the circumstances, we are of the opinion that the ruling complained of was not erroneous.

One of plaintiff's witnesses, over the objection of the defendant, was permitted to give her opinion based upon her knowledge and experience in handling canned salmon for a period of some thirteen or fourteen years, that the reason the tins rusted

was "that they had gotten wet," and on being asked for the reason of her opinion, answered, "Because I seen the leak in the roof over the salmon."

Defendant's contention is that a witness should not be permitted first to express an opinion, and then proceed to state the facts upon which the opinion is based, and that in this state opinions must be based upon facts in evidence already proven.

4. The order of proof is always within the sound discretion of the trial court, and unless there has been an abuse of discretion, the ruling of the court upon the order in which material evidence is produced upon the trial is not reviewable upon appeal.

A witness is permitted to explain the grounds of his opinion, as said by VIRGIN, J., in *Steam Mill Co.* v. *Androscoggin Water Power Co.,* 78 Me. 274 (4 Atl. 555), in order to enable the jury to "perceive the force of his reasoning, the soundness of his logic, and therefore judge of his capacity to give an opinion on the subject, the correctness of his conclusions, and consequently the weight due to his opinion." The same rule is laid down in 5 Ency. of Ev., p. 613.

5. The opinion given by the witness was based upon facts within her personal knowledge, and these facts were all disclosed by her in giving her testimony. The answers given by her were not in response to hypothetical questions. For this reason, the case of *State* v. *Simonis,* 39 Or. 111, is not in point. In that case, the question objected to was so framed as to call for the opinion of the witness, not only upon facts previously testified to by him, but also upon all the facts within his knowledge, whether stated by him or not. This was held to be error, because the value of an opinion depends largely upon the facts upon which it is based, and whether those

facts are relevant is a question for the court, and whether those facts are true is a question for the jury, and unless the facts are offered in evidence the court cannot pass upon their relevancy, and unless testified to, the jury cannot pass upon their truth or falsity. An opinion may be founded upon a supposed state of facts which, in fact, does not exist, and unless the facts upon which the opinion is based are testified to, and the jury be given an opportunity to determine their truth or falsity, the jury might accept the opinion and be controlled by it in a case where, if the facts had been disclosed to the jury, the jury might have found that the facts did not exist and therefore have entirely disregarded the opinion. For that reason the court there held that "even in cases where experts are called upon to give an opinion based upon their own personal observation or examination, the facts upon which the opinion is founded must all be stated." But this rule can have no application here, because all of the facts upon which the opinion of the witness was based were disclosed in her testimony.

Defendant also objects to the refusal of the court to permit the defendant to offer the testimony given by W. C. Leroy upon the former trial. It appears that Leroy had not been subpoenaed, and that the defendant, while offering this testimony, stated that Leroy at that time was at Salem, and within the state, at a distance of 150 miles from the place of trial.

Section 727, Or. L., provides that: "Evidence may be given on the trial of the following facts: Subd. 8. The testimony of a witness, deceased or out of the state, or unable to testify, given in a former action,

suit or proceeding, or trial thereof, between the same parties, relating to the same matter.''

The statute expressly enumerates the cases in which the testimony given by a witness in a former trial may be proved on a subsequent trial. Unless the case is one coming within those enumerated by the statute, the authority conferred by the statute cannot be exercised. The words ''unable to testify'' refer only to the mental or physical inability of the witness to testify, and the statute has no reference to the physical absence of a witness from the place of trial, unless such witness is out of the state. If it were otherwise, the clause ''out of the state'' was unnecessary to the statute, because if the testimony given upon a former trial of any witness not present at a subsequent trial of the same cause could be offered, it would be immaterial whether such witness was within or without the state.

6. It is evident from the language of the statute that in order to promote justice, the legislature intended to provide a means whereby the benefit of the testimony of a witness given upon a former trial in the same cause, and between the same parties, should not be lost in cases where otherwise such testimony could not be had, viz., where the witness had died, and therefore his testimony could not be had, or where the witness was out of the state, and therefore beyond the power of the court to compel his attendance upon the trial as a witness, or where a witness was within the state, and therefore his attendance upon the trial could be obtained by subpoena, but on account of his physical or mental disability, was unable to testify, and that in all other cases the testimony of the witness should be given upon the trial, or his deposition be obtained. Such

seems to be the rule generally in other jurisdictions: See 10 R. C. L., p. 966.

7, 8. The warehouse receipt that the defendant issued to the plaintiffs contained the provision that the defendant should "not be liable for any loss and damage from fire, floods, rats, the elements, defective packing, or inherent tendency to decay or ignite." The court charged the jury to the effect that nothing in the language of this provision would relieve the defendant from liability for damages or injury to the goods resulting from defendant's want of ordinary care and that the stipulated limitation upon the liability of the defendant did not include, or relieve the defendant from liability for permitting the salmon, while under its care, becoming wet from a leak in the roof of its house, or from any other source except atmospheric or other conditions not under the control of the defendant. It is urged that it was error to give this instruction.

While it is true, as a matter of law, that in the absence of a contract or statute, a warehouseman is not an insurer of the safety of goods while in his care, yet he is required to exercise a reasonable degree of care for their protection and is liable for any loss or injury resulting to the goods from his negligence or failure to exercise due care. Upon acceptance of the goods he impliedly, at least, warrants that he will maintain a structure reasonably sufficient to preserve the property stored. The provision above referred to was not intended to relieve the warehouseman from liability for damages resulting from a leaking roof, and as there was evidence tending to show that the leak in the roof was the cause of the damage complained of, it was proper for the court, in construing this writing, to instruct

the jury that the limitation of liability, as stipulated, did not include damages to the goods resulting from a leaking roof.

9. The court charged the jury to the effect that the defendant was bound to protect plaintiffs' property from unnecessary exposure to the elements, and that it was not permitted to leave the salmon in an open or exposed place without sufficient roof or protection from storms and rains, nor to allow the warehouse to become so out of repair that rains and storms would reach the property through the roof, walls or floor, and that it was required to exercise reasonable care and prudence in protecting the property from unnecessary exposure in those particulars. Defendant concedes the correctness of this instruction as an abstract proposition of law, but contends that there was no evidence showing, or claim made, that the defendant permitted the salmon to remain in an open or exposed place without a sufficient roof and protection from the storms and rains, nor that the warehouse was allowed to become so out of repair that rains and storms came through the walls or roof. The complaint specifically alleges that the defendant negligently permitted the roof of the warehouse above the place where the salmon was stored, to become out of repair, and that rain came through the roof and fell upon the salmon. There was no evidence that the water came through the floors or walls of the building.

There is no likelihood that the jury was misled by the court's using the words "walls and floor" in connection with the word "roof," in designating the places from which the defendant would not be permitted to allow water to reach the salmon, and we do not think that the inadvertent use by the court

of the words "walls and floor" resulted in any substantial or material detriment to the defendant.

10. The defendant complains because the court instructed the jury to the effect that the defendant, as a warehouseman, cannot avoid the effect of the negligence of its employees in failing to exercise reasonable care over property stored in its warehouse, by showing that it gave instructions to its employees to exercise such care, and that if the jury should find that the defendant actually gave such instructions to its employees, and that its employees failed to carry out such instructions, and damages resulted to the plaintiffs from such failure, defendant would be liable therefor. The defendant concedes the correctness of the instruction given as an abstract proposition of law, but claims that there was no testimony in the record to which the instruction could apply, and therefore the giving of the instruction was error.

The testimony disclosed that the defendant did give such instructions to its employees, and the evidence offered by the defendant tended to show that such instructions were carried out by its employees and also there was evidence tending to show that such employees did not exercise due care in preserving plaintiffs' property from injury, and that on account thereof plaintiffs sustained damages. It was therefore proper for the court to instruct the jury that the duty incumbent upon the defendant could not be delegated to its employees so as to relieve the defendant from liability for damages resulting to the plaintiffs from the negligence of defendant's employees, and that such duty on defendant's part was not discharged by merely instructing its employees to exercise reasonable care.

11. The defendant excepts to the court's refusal to give the following instructions:

"I instruct you that if you find from the evidence that there was a leak in the roof of the warehouse by which rain was let in on the salmon, but are also satisfied from the evidence that the railroad company used due care in endeavoring to protect the salmon, that is to say, the defendant railroad company did those things in looking after the salmon which an ordinarily prudent man would do, then it will be your duty to find a verdict for the defendant even though the tins became wet and rusted."

As heretofore stated, the complaint alleged that the injury to the salmon resulted from the negligence of the defendant in permitting the roof of the warehouse to become out of repair and to leak upon the salmon stored therein. Evidence was offered tending to establish that the injury to the salmon resulted from that cause. While this allegation of the complaint was denied by the answer and disputed by evidence offered by the defendant, the issue was settled adversely to the defendant by the verdict.

Whether the leak in the roof should have been anticipated by the defendant, and thereupon prevented, or whether, after the leak in the roof occurred, it should have been immediately discovered and repaired by the defendant, and if necessary plaintiffs' goods removed from that part of the warehouse affected by the leak, were matters not referred to in the instructions asked, and we are not prepared to say that the instruction, as requested, was proper.

Section 8028, Or. L., provides: "A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar

goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care.''

Under the provisions of this statute, if the care which the warehouseman had exercised in regard to the goods was such as a reasonably careful owner of similar goods would exercise, the warehouseman was not liable for any loss or injury to the goods, but if he failed to exercise such care, then the warehouseman was liable for any damages resulting from his failure in that regard. The instructions given by the court presented this feature fairly and fully to the jury.

''The warehouseman is liable for defects in his warehouse unless such defects are unknown to him and could not have been discovered by him by the use of ordinary care.'' Note d, 136 Am. St. Rep. 219.

It was the duty of the warehouseman to keep the roof of its warehouse in repair so that injury could not result to the goods while in its custody, and if by the exercise of such care as a reasonably careful owner of similar goods would have exercised the defendant could have anticipated the leak in the roof, or by the exercise of such care could or would have discovered the leak in time to repair the roof, or remove the goods to a place of safety before injury to the goods had resulted therefrom, and failed to exercise such care, then the defendant would be liable for the resultant injury. By failing to take this requirement of the law into consideration, the instruction, if given as requested, would have been misleading to the jury.

12. Defendant requested the court to give the following instruction:

"The pleadings in this case admit that the plaintiffs unpacked each and every case of salmon stored in the warehouse, removed the paper wrappings from each can and scoured and polished the rust off of each and every can where any rust appeared and then lacquered and replaced the cans in the cases; and the evidence shows that the plaintiffs paid $709.30 for labor and materials necessary to accomplish such work.. Now, if you find from the evidence that the market value of the salmon in question in this case after it had been reconditioned as stated is not diminished as to the market value, but is of the same market value after the conditioning that it would have had, had not the condition of the rust obtained, if it did obtain, and you further find that the defendant was guilty as claimed of negligence which caused such rusty condition, then you cannot allow the plaintiff a verdict in any greater sum than $709.30."

The court gave the instruction in the language requested, but added thereto the following words:

"In other words, if you find plaintiff is entitled to recover at all in this case, your verdict should be of such a character as to make them whole so that they will not have sustained any financial loss by reason of the damage, but they are entitled to no more than that."·

It is contended that the instruction requested should have been given without the addition. It is not contended that the words added to the requested instruction constitute a wrong exposition of the law of the case, but it is urged that it was error to insert this addition to the instruction requested.

While the part added is not wholly pertinent to the matter covered by the requested part of the instruction, yet as neither the part added nor the instruction given as a whole incorrectly stated the law, defend-

ant's rights are not any more affected than they would have been had the added part been given as a separate instruction.

Being unable to find error in the record, the judgment must be affirmed, and it is so ordered.

AFFIRMED.

BURNETT, C. J., and McBRIDE and HARRIS, JJ., concur.