Day, J.
Did the court of common pleas err in the second trial of this case in allowing the reading from the record of the former trial the testimony of the witnesses Ora Whitcomb and Agnes Whitcomb, over the objection and exception of the railroad company?
Authority for the reading of the testimony of a witness given at a former trial is found in Section 11496, General Code, which reads, in part, as follows:
“When a party or witness, after testifying orally, dies, is beyond the jurisdiction of the court, can not be found after diligent search, or is insane, or, through *402 any physical or mental infirmity, is unable to testify, or has been summoned, but appears to have been kept away by the adverse party, if the evidence given by such party or witness is incorporated into a bill of exceptions, in the case wherein such evidence was given, as being all the evidence given by such party or witness, and such bill has been duly signed by the judge or court before whom such evidence was given, the evidence so incorporated into such bill of exceptions, may be read in evidence by either party on a further trial of the case.”
Section 11506, General Code, makes provision as follows:
“A witness shall not be compelled to go out of the county where he resides, or is subpoenaed, except to an adjoining county, to testify in a civil action, except where the case has been removed from the county in which such witness resides by change of venue.”
The position of the railroad company is that if a witness is within reach of the process of the court, so that his attendance can be compelled, then there is no right to read his testimony merely because he is not within the county of the court trying the case, even though such testimony is a part of the bill of exceptions of a former trial between the same parties; that the record fails to show any ground, within Section 11496, or otherwise, why such testimony given at a former trial should be read, and no reason whatsoever why the witness in question should not have been produced at the second trial.
An elaborate discussion of the law with respect to the reading of the testimony of witnesses at a former trial will be found in Toledo Traction Co. v. Cameron (C. C. A.), 137 F., 48. The growth of the principle from the common law into statutory form is traced, and in that case it was held that the Ohio statute, “which authorizes the admission in evidence of the testimony given by a witness on a former trial of the *403 same case when the witness is dead or beyond the jurisdiction of the court, is in conformity with the rule recognized at common law, which permits the use of such evidence generally where it is impossible to obtain a viva voce examination of the witness.”
The matter is expressed in 17 Ohio Jurisprudence, 591, as follows:
“In order, however, to admit evidence given at a former trial, a proper showing of the unavailability of the witness who gave the testimony sought to be proved in the subsequent action, must be shown.”
10 Ruling Case Law, 966, Section 143: “The mere fact that testimony has been given in the course of a former proceeding between the parties to a case on trial is no ground for admitting it in evidence. The witness must be produced under such circumstances, just as much as one testifying de novo.”
Wigmore on Evidence, vol. 3 (2d. Ed.), 144, Section 1415: “No one has ever doubted that the former testimony of a witness cannot be used if the witness is still available for the purpose of testifying at the present trial. # * So also if the witness is within reach of the court-process and is not shown to be unavailable by reason of illness or the like, the deposition is inadmissible. ’ ’
Jones on Evidence, vol. 3 (2d Ed.), 2175: “Parol evidence of the testimony of a witness on the former trial of the same case is not admissible where the parties have relied upon his mere promise to attend, and have made no effort to compel his attendance, although he was within the jurisdiction of the court. As a general proposition the evidence given by a witness at a' former trial of the case is not admissible on the second trial when such witness, though absent, might have been produced on the trial. Temporary absence, when there has been no effort to subpoena the witness, is clearly insufficient.”
See, also, Hansen-Rynning, Admr., v. Oregon-Wash *404 ington Rd. & Navigation Co., 105 Or., 67, 209 P., 462; Southern Ry. in Kentucky v. Owen, 164 Ky., 571, 176 S. W., 25.
We hold that the words “beyond the jurisdiction of the court,” in Section 11496, General Code, are to be construed as meaning beyond the reach of the process of the court. It does not appear that these witnesses could not have been subpoenaed from an adjoining county, or compelled to appear. The reading of their testimony was therefore error.
It is contended, however, by defendant in error, that the testimony was purely cumulative, and that its admission, therefore, was not prejudicial to the railroad company.
On the other hand, the railroad company claims that the testimony which was read referred to some of the chief issues of the case and was in conflict with the evidence of other witnesses, some of which was different from that of the first trial, so that further cross-examination of the Whitcombs was necessary for the making of its case.
The nature and extent of the injuries of Stevens was one of these issues; Stevens having lived over a year after the first trial, dying from other causes than the injury involved in the instant case. Therefore the railroad company claims that the testimony of the Whit-combs was material; Mrs. Whitcomb having testified:
“A. Why, he don’t get around very good; he seems to be lame, and can’t use himself like he did before; he can’t get around and near as limber as he used to be before the accident.”
“Q. And what, if anything, did you notice with regard to his nervous system! A. Why, he is lots more nervous now. Well, he practically was not nervous at all before this happened, but this has just wrecked him.”
Also on the former trial Ora Whitcomb gave the following testimony:
*405 “Q. Did you observe, then, what was his condition? A. I took care of him; he was terrible bad; of course I didn’t know until I found out myself; I had to help him to bed. * * *
“Q. What have you observed with regard to his condition and the manner in which he walks and carries himself as compared with what you saw before he was hurt? A. I can tell a big difference in him, an awful big difference in Mr. Stevens.
“Q. And what, if anything, have you observed with regard to his nervous condition? A. He is much more nervous; he was not nervous like this before.”
Ora Whitcomb also testified with respect to the tracks and the cement driveway, the location of the buildings and surrounding conditions.
The railroad company claims it should have had the benefit of cross-examination of these two witnesses, in the light of the evidence offered at the second trial.
The right of cross-examination and the testing of the memory of the witness and the personal appearance of the witness before the court and jury are all of great value to either party in the trial of a case. Both of these witnesses were within reach of the process of the trial court. The trial was in Lucas county, and the witnesses resided in the adjoining county of Fulton. Section 11506, General Code, authorizes process to compel their attendance.
The burden of showing a valid excuse for the non-production of the absent witnesses lies upon the party seeking to introduce their former testimony. No showing is made that by diligence their attendance could not have been procured.
Although the evidence furnished by the testimony of the two witnesses, which the trial court allowed to be read from the record of the first trial, may have been in some degree cumulative, we cannot say that its erroneous admission was not prejudicial to the defendant. Its admission, therefore, was material, even *406 vital, to the defendant; and hence prejudicial error on the part of the court.
Another question presented by this record is whether or not Stevens was guilty of contributory negligence which prevents his recovery.
This case was before this court upon a previous occasion, to wit, upon motion to certify after the Court of Appeals had set aside the verdict after the first trial, and remanded for a new trial. The reversal by the Court of Appeals was based upon the weight of the evidence, and, under Rule XIX, this court was required to affirm and remand for further proceedings, so that the question whether or not Stevens was guilty of negligence which proximately contributed to his injury was not considered by this court.
The majority of the court are of opinion that the record discloses that Stevens was guilty of such negligence, proximately contributing to his injury, as a matter of law, and that the court of common pleas should have directed a verdict in favor of the railroad company at the close of the plaintiff’s case.
The facts surrounding the accident disclose that Stevens at best was a mere licensee, and the railroad company owed him at most the duty to refrain from willfully or wantonly injuring him and to exercise ■ ordinary care after discovering him in a position of peril.
The accident happened in a railroad yard at about 6:30 in the morning, in the month of January, while Stevens was walking between the two switch tracks, going, to his work in the Willys-Overland factory. His testimony in direct examination is as follows:
“A. Why, I went on the tracks — after I would get past where the driveway was made around for. them to drive into the buildings, I heard a.train a-coming, and I was walking along and there was a switch there where there was one track went to the left and one to the right. Now, you understand me, you can hear me *407 plain enough, can you? — and I was between the tracks in the path where we all traveled and went on.”
“Q. Tell it to the jury. You don’t have to tell it to Mr. Newbegin. A. And I heard a train on my left, I heard an engine, and I was walking between the tracks and I could see nothing, there was no lights, nc lights on the engine and it was very dark at 6:30 — this was just about 6:30 and it was very dark — and I was walking along and I heard this engine to my left, anc I took one small step, short step, to my right, to be' sure — I never knew of an engine coming on this other track, and I stepped, my foot close to the rail, and this engine — I took probably two steps and this engine hi me and I was unconscious.”
In cross-examination Stevens testified:
‘ ‘ Q. Now, when you came down between those tracks on the morning when you were injured, I understood you to say that you heard the engine on the track tc your left? A. Yes, sir.
“Q. It was a good level place to walk there, was it? A. Yes, sir. ;
“Q. And you said you didn’t hear the engine on your right? A. Well, I heard it, but I was thinking only of the one to the left.
“Q. You heard the engine on your right, too? A. I must have heard it, yes.
“Q. But you, notwithstanding hearing that engine, you continued to walk right along on the ties of the track, didn’t you? A. No; I was not walking on the ties * *
The distance between the rails of lead track No. 1 and lead track No. 2 is disclosed by the following testimony from the record, being that of Roland Nagle, the civil engineer who testified to the blueprint attached to the record:
“Q. Let us qualify that a little; the distance between the east rail of No. 2 switch lead and the west rail of No. 1 switch lead, in other words, the distance *408 between the tracks? A. From here to here, is that the idea; from this rail to this rail, the two inside rails ?
“Q. Yes? A. I can’t tell you the exact distance, but the approximate distance is thirteen feet less 4.7.
“Q. Less four feet and seven-tenths? A. 4.7 feet. Yes.
“Q. That would be approximately nine feet, or a little over eight feet? A. 8.3.”
The clearance between the two engines upon No. 1 and No. 2 lead tracks is shown by the testimony of Alfred F. Stowe, the fireman on engine No. 276:
“Q. Of course, that is true, but you could almost reach over and touch the other cab, couldn’t you? A. Hardly.
“Q. How much clearance is there between the cabs? A. I don’t know the exact footage between two cabs, but they was quite a distance.
“Q. Three feet? A. More than that.”
Stevens heard the engine which he struck, or which he says struck him, but he neglected to pay attention to what he heard. “I was thinking only of the one to the left.” It thus appears that he heard the engine into which he walked, or which struck him when it was slowly backing. In either event, he heard the engine which caused his injury. In his own words:
“I was thinking only of the one to the left * *
“Q. You heard the engine on your right, too? A. I must have heard it, yes.”
It is apparent that he left a place of safety and stepped into the zone of danger. We cannot escape the conclusion that this action bn the part of Stevens constituted negligence which proximately contributed to his injury and prevents his recovery. The facts, as shown by the plaintiff’s own testimony as to how the accident happened, will warrant no inference, in our judgment, that the plaintiff at the time of the injury was exercising due care for his own safety.
*409 The court of common pleas should have directed a verdict for the railroad company, and the Court of Appeals should have so ordered.
Proceeding to enter the judgment which the Court of Appeals should have entered, the judgment of the Court of Appeals is reversed and final judgment is entered for the plaintiff in error.

Judgment of the Court of Appeals reversed and final judgment for the plaintiff in error.

Allen, Stephenson, Jones and Matthias, JJ., concur. ,