[Civ. No. 1879.   Third Appellate District.—December 27, 1918.]

## J. D. DAMERON, Appellant, v. JAMES T. ANSBRO, Respondent.

PHYSICIANS AND SURGEONS—MALPRACTICE—VERDICT SUPPORTED BY EVIDENCE.—In this action by a physician for services, a verdict for damages in a cross-action for malpractice was held to be not without substantial support in the evidence.

ID.—EVIDENCE—EXPERT TESTIMONY—HYPOTHETICAL QUESTION—FACTS NOT INCLUDED.—Considerable latitude must be allowed in the choice of facts as the basis of hypothetical questions, and if the question is fair and understandable by the witness it is not to be excluded because it does not comprehend all the important facts in the case.

ID.—FORM OF OBJECTION.—One desiring to insist on the objection to a hypothetical question that it fails to include essential facts should specify the facts which ought to have been included.

ID.—RES GESTAE — STATEMENTS OF ATTENDING PHYSICIANS — DECLARATIONS.—Statements of the attending physicians at the time of the treatment are admissible as part of the *res gestae,* and may be included in a hypothetical question, but declarations that were no part of the treatment should be left out, as they are incompetent.

ID.—CROSS-EXAMINATION — PREJUDICIAL STATEMENT BY COUNSEL. — Where in a cross-action for malpractice against a physician, one of his witnesses, a member of a county medical association, was

39 Cal. App.—19

asked whether the cross-complainant was not a member of the same
association, the statement of counsel in reply to inquiry by the
court that the purpose of the question was to show whether or not
"the association protects any member in litigation brought against
him in a case of the present character," was likely to be prejudi-
cial.

Id.—Illustrating Testimony — Human Skeleton.—Refusal by the
court to allow the appellant physician to illustrate his testimony
by reference to a human skeleton violated no legal right, the mat-
ter being left to the sound discretion of the court, which was not
abused by the refusal.

Id.—Instructions—Degree of Skill and Learning Required.—A re-
quested instruction to the effect that whether the defendant physi-
cian was negligent in his treatment of the patient was to be deter-
mined by finding whether or not he possessed and used that degree
of skill and learning possessed and used by physicians of the same
school practicing in the same or similar localities, lays down a
standard clearly established by the authorities, and might well
have been given by the trial court.

Id.—Instruction Properly Refused.—The court properly refused to
instruct the jury to the effect that, as to whether the physician in
breaking up certain adhesions in the knees of the patient exer-
cised ordinary care and skill in his method and in the amount of
force used therefor, were questions that the jury must look solely to
the testimony of the medical and surgical witnesses to determine.

Id.—Action for Physician's Compensation—Cross-action for Mal-
practice—Instruction Improperly Refused.—In this action for
a physician's services, and for room, board and nurse hire, in
which the defendant brought a cross-action for malpractice, the two
actions having been tried together, and the second action treated
as a cross-complaint, the court erred in refusing to instruct the jury
that the complainant physician was entitled to recover the reason-
able value of the use of the room and of board and nurse hire, re-
gardless of the question whether he exercised ordinary care and skill
in the treatment of the patient.

Id.—Erroneous Instruction.—The trial court erred in instructing the
jury in such case to the effect that it was not necessary for the
defendant and cross-complainant to prove gross culpability on the
part of the plaintiff, but proof of any failure to exercise proper
care on the part of the plaintiff, or any carelessness or negligence
in the discharge of the duty assumed by plaintiff, was sufficient
to enable the defendant and cross-complainant to recover in this
action, if the jury believed from a preponderance of the evidence
that plaintiff was unskillful or careless or negligent, and that the
cross-complainant was injured thereby.

APPEAL from a judgment of the Superior Court of
San Joaquin County.  C. W. Norton, Judge.  Reversed.

The facts are stated in the opinion of the court.

Lafayette J. Smallpage and Hartley F. Peart for Appellant.

Arthur L. Levinsky for Respondent.

BURNETT, J.—On the night of September 18, 1912, respondent, while asleep in his buggy, was crossing the railroad track of the Southern Pacific Company about sixteen miles from the city of Stockton, and he collided with a steam train traveling at the rate of thirty or thirty-five miles per hour. He was immediately taken at his request to the Dameron hospital in said city. He was examined by Dr. Dameron, the plaintiff and cross-defendant herein, and by Drs. L. E. and Harry Cross. One of the witnesses described Mr. Ansbro's appearance and condition as follows: "His clothes were torn, dirty and blood marked. His face was skinned, grimy and covered with blood from a wound in the forehead. His hand was also cut and bleeding. His legs were displaced and distorted; he was dazed and confused, suffering from traumatic shock. He constantly called for water and cigarettes." After giving him the usual hypodermic treatment, the physicians made an examination to ascertain the extent of his injuries. It was found that he had, at least, ten fractures of the legs and arms as follows: A compound fracture of the left fibula; a comminuted fracture of the left fibula; a fracture of the internal malleolus of the left foot; an oblique comminuted fracture of the left femur; a piece of bone had been broken off from one of the segments of this fractured femur and this loose piece intervened between the separated parts; a comminuted fracture of the right femur, the injury being similar to that of the left femur; a multiple fracture of the fibula of the right leg consisting of two separate distinct fractures; a transverse fracture of the right tibia and a comminuted fracture of the right radius of the right arm. The legs of the patient were badly bruised and discolored; the compound fracture of the left fibula constituted an open wound, the fractured ends of the bone protruding through the flesh of the leg. His condition was very grave, and it was subsequently aggravated by the appearance and development of ether congestion of the lungs and also cystitis, which persisted for ten days with intense

severity. Indeed, it is quite apparent that the case was a serious one, and to a layman it would seem somewhat remarkable that in a comparatively short period of time Mr. Ansbro was restored substantially to his former condition of health and strength. However, the final treatments were given by another physician at another hospital, after respondent became dissatisfied with Dr. Dameron; and the contention that the recovery was delayed by the negligence and carelessness of the latter merits attention and consideration. No complaint is made of the treatment in the early days of the trouble, but fault is found with the manner in which the fracture of the left femur was attempted to be reduced and corrected on September 30th, and, also, with the conduct of appellant in breaking up the adhesions in respondent's knees on November 25th. These are the two specific acts of negligence upon which respondent bases his claim for damages. They were alleged in his pleadings, and to these specified acts the evidence was addressed.

As to the first of these claims, we need say but little. The contention is that there was "bad apposition and also overlapping" of the fragments after the operation was performed by Dr. Dameron. The result was stated by Dr. Ellis Harbert as follows: "There is about two inches overlapping there, and the bones are entirely displaced one on top of the other."

Incidentally involved in this affirmation of negligence is the further claim that Dr. Dameron made an erroneous diagnosis of the osseous union of the fracture, and that he negligently failed to adopt the "Lane plate" method of treatment. It is admitted by respondent that all the remaining fractures were reduced and set in proper apposition, and that the treatment as to them by Dr. Dameron and his assistants was in accordance with the requirements of the best surgical skill. On the other hand, appellant asserts that the left femur was set in as nearly perfect apposition as was possible in view of the nature of the condition of that fracture and of the other fractures in the same leg.

We may state that respondent, in his brief, seems to attach little importance to this assignment of negligence, and it is quite apparent that it was a circumstance of slight moment in the determination of the cause. As a basis for affirmative relief it was, indeed, eliminated by reason of the fact that the operation was performed more than a year before the

action was instituted by respondent.    (Code Civ. Proc., sec. 340, subd. 3.)

It is true that the court instructed the jury that it might be considered as a defense to appellant's claim for compensation, and it is possible that it had some effect upon the amount of the verdict.    The stress, however, was laid upon the other assignment of negligence, and we deem it sufficient to say that it is a close question whether there is sufficient support for the claim that appellant in his treatment of said fracture failed to exercise that care and skill which the law and the accepted standard of professional competency demand of the physician and surgeon.

On November 25th, Mr. Ansbro was etherized, and Dr. Dameron, assisted by Dr. Knight, who participated in the reduction of the fractures on September 30th, made a careful examination of all the fractures which had existed as before stated.

It was ascertained that seven of the ten fractures had united and healed perfectly, but they concluded that the right tibia and the right and left femurs had failed to make an osseous and satisfactory union.    As to this, though, we may say it is the contention of respondent that a mistake was made in the diagnosis and, as a matter of fact, a bony union had taken place in all the fractures.    At any rate, it was found that very dense adhesions had been formed in Mr. Ansbro's knees due to the passive condition in which they had been kept for eight weeks and to the shock and force of the blow causing the fractures.    After consultation, Dr. Dameron determined to reduce the adhesions before resetting the fractures.    As to these adhesions, we may say that there is no doubt they existed, and all the expert evidence shows that it was of great importance that they be broken up.    The showing is, also, that it was an opportune time for such treatment, and the particular method adopted by appellant to accomplish the purpose is sanctioned by the approved standard of surgical skill.    It is not disputed that Dr. Dameron by manipulation overcame these adhesions in both knees.    He then stimulated the fractures of the right femur and right tibia by rubbing together the ends of the bones, after which he set the fractures in apposition and placed a plaster of paris cast upon the leg. There can be no controversy that such treatment of these fractures is considered proper by those competent to decide

the question. He determined, so he testified, that it would not be advisable to attempt to secure apposition in the left femur by using a plaster of paris cast but that the same should be Lane plated.

He did not desire to perform this latter operation, however, without the express consent of Mr. Ansbro and he, therefore, placed the fracture in a good temporary position while awaiting the patient's recovery from the effects of the anesthetic. As we have already stated, his failure to thus plate this fracture is condemned by respondent, but appellant gives a plausible explanation of his conduct in that matter, and it appears from his statement that by reason of respondent's dissatisfaction with his condition, and the consequent change to the care and treatment of another physician and surgeon, appellant did not put in the Lane plate. There are some minor matters discussed in connection with this treatment of November 25th, but the only material and vital claim of respondent, as we understand it, is that all the ten fractures had made an osseous and permanent union and that Dr. Dameron, in overcoming the said adhesions, was so careless and negligent in the amount of force which he used, that he refractured the right and left femurs and the right tibia in the same places as originally fractured. Indeed, respondent admits in his brief that Dr. Dameron is a good surgeon and so recognized in the community, but he asserts "he was careless and negligent in his attempt to reduce the adhesions and he used such force that he rebroke the fractures. He may have been skillful, but he was careless and negligent and by reason thereof Ansbro is entitled to recover in this action." The evidence offered in support of this claim consisted of certain admissions and statements of appellant, the testimony of eye-witnesses as to the manner in which the manipulation was performed, and the opinion of experts based upon hypothetical questions. It is earnestly insisted by appellant that the evidence is totally inadequate to support the conclusion that in said treatment he failed to manifest "that reasonable degree of learning and skill ordinarily possessed by others of his profession," or that he did not use or exercise ordinary care and diligence in the application of the skill and knowledge to accomplish the purposes for which he was employed. It is further claimed that in view of the entire record it is preposterous to assert that Dr. Dameron was guilty of malpractice, and that the verdict

of the jury is manifestly wrong and unjust. It must be admitted that a remarkably strong defense to the charge was made by appellant. His witnesses put an entirely different construction upon certain circumstances and conditions from the view presented by respondent, and they negatived the existence of any fact that would have indicated negligence on the part of Dr. Dameron. It may be added that such an imposing array of expert witnesses as were called by appellant is seldom seen. They embraced some of the most eminent surgeons in California, and at least one of the most distinguished in the world, the late Dr. John B. Murphy of Chicago, and these experts were emphatic that the treatment of respondent by appellant, as disclosed by the facts recited in the hypothetical questions to said witnesses, was in accordance with the highest surgical skill and entirely beyond censure or reproach.

One carefully and impartially reading the voluminous record can hardly resist the conclusion that the verdict ought to have been the other way, but without reciting the evidence, we think it cannot be said that the verdict of the jury against appellant has no substantial support.

Among the asserted errors of the trial court is its action in overruling an objection by appellant to a hypothetical question addressed to Dr. Harbert. The grounds of the objection to the question are stated by appellant as follows: "It is not based upon all the essential, vital, and undisputed facts in the case, and hence is absolutely unfair. 2. It included conversations and statements which constitute hearsay and which required the expert witness to whom the question was addressed to determine the meaning and application of such statements, and to resolve and determine facts not specifically assumed. 3. The question included a purely hearsay statement attributed to the assisting surgeon."

The question is manifestly an important feature in the showing made by respondent. It constitutes the basis for substantially the only expert evidence offered on his behalf, and it, therefore, merits serious consideration. It is too long to quote in full, but we may state generally that it attempts to recite what was done and said by appellant in relation to the treatment of respondent, beginning with the thirtieth day of September and including the successful effort to break up the adhesions on the 25th of November, and it concludes with this

interrogation: "Assuming the statement I made to you to be true, how long, in your opinion, was the patient delayed in being restored?"

This was followed by a similar hypothetical question concluding as follows: "Assuming that the facts I have stated to you are true, state whether or not, in your opinion as a physician and surgeon that it was good surgery?" No doubt the appellant in the foregoing grounds of objection has suggested certain principles that are recognized by the authorities as applicable to hypothetical questions. (*Farrell* v. *Haze,* 157 Mich. 374, [122 N. W. 197] ; *Miller* v. *Leib,* 109 Md. 414, [72 Atl. 466] ; *Dexter* v. *Hall,* 82 U. S. 9, [21 L. Ed. 73, see, also, Rose's U. S. Notes] ; *Swanson* v. *Wood,* 99 Wash. 506, [170 Pac. 135].) However, they must, of course, be regarded in the light of the particular facts of each case.

As to the first ground, it is true that certain important facts were omitted, as suggested by appellant, such as the condition of the patient, the existence of other fractures, the results obtained, the date of the injuries, and others, but it does not appear that the recital of these was necessary to enable the expert to form and express an intelligent opinion as to the treatment of the case. Considerable latitude must be allowed in the choice of facts as the basis of hypothetical questions, and if the question is fair, and understandable by the witness, it is not to be excluded because it does not comprehend all of the important facts in the case. Of course, additional facts may be brought out in the cross-examination, as was done herein, that might cause modification of the answer of the expert. Besides, appellant in his objection in the trial court did not specify any additional facts which ought to have been included. He should have done so if he desired to insist upon the point. The second and third grounds probably possess more merit. It is apparent that the question is somewhat faulty in the respects thus indicated. It included a statement alleged to have been made by Dr. Dameron "that there was good union, good results," and furthermore, that he stated, "It is broke," and again: "Whereupon one of the persons in the room asked the physician in charge, or stated to him, 'Didn't you break that bone—in the leg?' and he said, 'No; that is the giving way of the adhesions.' " The question also included the statement: "Whereupon the physician who was assisting the physician in charge said: 'It is broken above

the knee,' and the physician in charge of the patient made an examination of the place above the knee and said, 'It is broken,' whereupon, those two physicians agreed that they would place a plaster-of-paris cast on the right leg.'' Other statements of the assisting physician, ''to go easy'' and ''I think you have worked long enough this time; I would put him under an anesthetic some other time and reduce the adhesions gradually,'' were included in the question. These statements were not a part of the treatment and they do not necessarily imply what was done. Of course, it is clear that the fact that these various statements were made could not possibly have affected the condition of the patient, nor in any manner have prolonged his recovery. It is only by interpreting these statements as evidence of careless conduct on the part of appellant could they be of any assistance to the witness in forming an opinion as to the character of the treatment. The better practice would have been to eliminate the conversations and assume the inferences therefrom as facts and upon that basis interrogate the expert. By the form of the question, the witness was called upon to interpret the meaning of these various statements and thus to act in the place of the jury. This is not his province. ''The question should be so framed as to clearly present the state of facts which the counsel claims to be proved and which the testimony on his part tends to prove.'' (Jones on Evidence, 2d ed., sec. 370.)

It is true that declarations of the physician at the time of the treatment are admissible as part of the *''res gestae''* and may be included in a hypothetical question. (*Mayo* v. *Wright,* 63 Mich. 32, [29 N. W. 832].)

We do not say that it was prejudicially erroneous to so include them, but we think the other method the better practice. At any rate, the statements of the attending physician ''to go easy,'' etc., should have been left out, as they were incompetent.

It was important that great care should be exercised in framing these hypothetical questions, as the jury undoubtedly based the verdict largely upon the answers of this expert.

Dr. Priestly, a witness for plaintiff and appellant, testified that he was a member of the San Joaquin County Medical Association and he was asked if Dr. Dameron and Dr. Fitzgerald were members. To this question an objection was made, and in reply to the court's inquiry as to the purpose

of the question, counsel for respondent stated: "The purpose of showing whether or not the Association protects any member in litigation brought against him in a case of the present character." It was not admissible for that purpose, as is virtually conceded by respondent. In *Pierce* v. *United Gas & Electric Co.*, 161 Cal. 188, [118 Pac. 706], the supreme court said: "Evidence that a defendant in an action for damages is insured against loss by reason thereof is not admissible (*Roche* v. *Llewellyn Iron Works Co.*, 140 Cal. 563, [74 Pac. 147]), and it would undoubtedly be improper for counsel for plaintiff to endeavor to get such a fact before the jury by question designed solely for that purpose."

In *Shay* v. *Horr*, 78 Wash. 667, [139 Pac. 604], it was said: "We have held in these cases (*supra*) that it is improper to either directly or indirectly get before the jury any fact which conveys the information that the defendant is insured against loss in case of a recovery against it, and that the striking of the answers conveying such information and the instructing of the jury not to consider it *will not save the error.*"

It is altogether probable that the jury would be more inclined to find a verdict against appellant if it were believed that he was indemnified than if it were understood that he was to bear the burden alone.

Granting that the question was proper to show the interest or bias of the witness, the statement of counsel was likely to be prejudicial and the court should, at least, have permitted appellant to show as a matter of fact that no such indemnity really existed. It has been held that even in examining jurors such questions are highly improper. (*Pierce* v. *United Gas & Electric Co.*, *supra.*)

The court refused to allow Dr. Dameron to illustrate his testimony by means of a human skeleton. We do not understand that appellant was thereby denied any legal right. It is a matter left to the sound discretion of the court. No doubt, such object may often be properly used to make more intelligible the testimony of an expert. (*Chicago etc. R. Co.* v. *Walker*, 217 Ill. 605, [75 N. E. 520].) It falls within the same category as pictures and diagrams.

While we think permission might well have been granted, we cannot say that the use of the skeleton would have aided the jury in any manner or that the court abused its discretion in denying the request.

We think the court should have allowed the question asked of Dr. Harbert on cross-examination: "Doctor, suppose an osseous callous had been thrown out around the seat of that fracture in the left femur prior to the time you Lane plated it, would it not have been good surgery—and assuming that the osseous callous had been distributed some week or nine days before, would it not have been good surgery to have placed the fragments in apposition and let nature's process of bone repair continue without putting on the Lane plate?" The question was calculated to test the competency of the witness and discredit his statement on direct examination that he had found such osseous callous or, at least, it might have revealed the extent of such formation. The cross-examination had particularly in view the point that there was no bony union in that fracture. This was an important feature of appellant's position. If there had been no such union there could, of course, have been no refracture. From the direct testimony of Dr. Harbert, the jury would get the impression that there was an osseous union instead of a fibrous as contended for by appellant, and any question calling for an answer that would modify or remove this impression was proper cross-examination. An objection was also sustained to several other similar questions on the same ground. The questions were asked for the reason stated by counsel for appellant: "To show that if conditions existed as from the testimony of this witness that good surgery would have prompted a different course than that that was pursued." If good surgery would have prompted a different course upon such contingency it could assuredly be argued that no such condition existed. The questions were somewhat similar to the cross-examination as to custom in *Meyer* v. *McNutt Hospital,* 173 Cal. 156, [159 Pac. 436].

Appellant complains of the action of the court in refusing certain instructions requested by him to the effect "that the question of whether Dr. Dameron was negligent in his treatment of Mr. Ansbro was to be determined by finding whether or not he possessed and used that degree of skill and learning possessed and used by physicians of the same school practicing in the same or similar localities." Such standard is clearly established by the authorities and the trial court might well have given that specific instruction. It is claimed by respondent that it was substantially covered by others which were

given, and this is probably true. At least, it is a fair implication from several of them construed together that the measure of appellant's responsibility for his treatment of respondent is the standard for which he contends.

Appellant contends that the court erred in refusing this instruction: "As to whether or not Dr. Dameron, in breaking up the adhesions in the knees of Mr. Ansbro, on the 25th day of November, 1912, exercised ordinary care and skill in the method of breaking up said adhesions and in the amount of force used therefor, are questions that you must look solely to the testimony of the medical and surgical expert witnesses to determine." In support of his claim he cites *McGraw* v. *Kerr*, 23 Colo. App. 163, [128 Pac. 870], and *Houghton* v. *Dickson*, 29 Cal. App. 321, [155 Pac. 128]. In the former it is said: "The authorities are practically uniform in holding . . . that as to what is or is not proper practice in examination and treatment, or the usual practice and treatment is a question for experts, and can be established only by their testimony." In the latter case, referring to whether plaintiff's elbow was dislocated, the court said: "Whether or not defendant should, under the circumstances, in the exercise of ordinary and reasonable care and skill, have discovered such condition, assuming it to have existed, was a question for expert testimony and none was offered." As to the nature of the treatment required and the amount of force that might be exercised to break such adhesions as existed in this case, manifestly, only an expert could properly determine and testify. But the instruction proposed was faulty as implying that only an expert could testify as to the amount of force that actually *was used* and the method of treatment that was actually employed. As to what occurred, of course, the nonexpert was as competent as the expert witness. If there had been no dispute as to the facts it would have been a question solely for the physicians and surgeons. But, as we view the record, we think it was not error for the court to refuse the instruction, there being a conflict as to the facts.

We think the court should have instructed the jury as requested by appellant, that Dr. Dameron was entitled to recover the reasonable value of the use of the room and of board and nurse hire, regardless of the question whether he exercised ordinary care and skill in the treatment of the defendant. It appears that the complaint filed by Dr. Dameron

embraced two causes of action, one for his professional services in the sum of $250 and the other for room, board, and nurse hire furnished to Mr. Ansbro at his request in the sum of $490. Another action was brought by Mr. Ansbro against Dr. Dameron for damages for malpractice, and these two actions were consolidated by consent and tried together, the complaint of Mr. Ansbro being treated as a counterclaim and cross-complaint. There was no contention that the board and nurse hire, etc., were not reasonably worth the amount charged, and their value to respondent was not affected by any question of the correct treatment of the fractures. The jury should have been instructed to allow plaintiff credit for those items.

Probably the most serious error consisted in giving the jury the following instruction: "It is not necessary for James T. Ansbro, the defendant and cross-complainant in this case to prove gross culpability on the part of the plaintiff, Dr. Dameron, but proof of any failure to exercise proper care on the part of Dr. Dameron or any carelessness or negligence in the discharge of the duty assumed by Dameron is sufficient to enable the defendant and cross-complainant Ansbro to recover in this action, if you believe from a preponderance of the evidence that Dr. Dameron was unskillful or careless or negligent, and that James T. Ansbro was injured thereby." The instruction permitted the jury to apply its own standard of care or that of each individual juror to the treatment accorded the defendant by plaintiff. It completely ignored the test fixed by the law based upon the methods and practice of the school of medicine to which appellant belonged. In the recent case of *Hesler* v. *California Hospital Co.*, 178 Cal. 764, [174 Pac. 654], this instruction was condemned: "To sustain an action it is not necessary to establish gross culpability; mere evidence of want of proper care or ordinary care or attention and advice in the discharge of duty by a physician is sufficient to take the case to the jury." It is true that in that case some other objectionable instructions were given, but they could hardly be considered more confusing or misleading than the one given herein. According to the instruction the jury may have believed that Dr. Dameron possessed and exercised that degree of learning and skill ordinarily possessed by physicians and surgeons of good standing practicing in that locality, and yet that he did not treat the case in a proper manner

according to the views of the jurors, and, therefore, was liable for damages. It makes no difference that other instructions may have presented the correct standard, as that would simply be an instance of an irreconcilable conflict.

We think the judgment and order should be reversed, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 25, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 24, 1919.

All the Justices concurred.