[Civ. No. 4317.   Second Appellate District, Division One.—December 1, 1924.]

## WILLIAM H. PEARSON, Respondent, v. EDWIN H. CRABTREE et al., Appellants.

[1] PHYSICIANS AND SURGEONS—MALPRACTICE—JOINT TORT-FEASORS — EVIDENCE—VERDICT.—In an action against two physicians and surgeons for damages for malpractice, where the evidence against one defendant is materially different from that against the other, the evidence may be sufficient to sustain a verdict against one defendant and not sufficient to justify a verdict against the other.

[2] ID.—ACTION FOR DAMAGES—EVIDENCE—VERDICT.—In this action against two physicians and surgeons for damages for malpractice in the treatment of plaintiff following an accident in which he suffered an impacted fracture of the left hip, the evidence as to the acts and conduct of the defendant physician and surgeon who was in charge of the emergency hospital to which plaintiff was taken after the accident, and who failed to discover the nature of plaintiff's injuries and properly treat him therefor, was sufficient to warrant the jury in rendering a verdict against said defendant.

[3] ID.—X-RAY SPECIALIST—DEGREE OF CARE REQUIRED—CUSTOMARY PRACTICE—NEGLIGENCE.—In such action, the defendant physician and surgeon who undertook the treatment of plaintiff's injuries by the use of the X-ray was only required to use such reasonable care, skill, and diligence as are usually or customarily exercised by others in the same line of practice and work in similar localities, or in the same section of the country; and said defendant was not guilty of negligence in failing to take X-ray pictures of plaintiff's right hip in connection with those taken by him of the injured left hip, in order that by comparing the pictures of the left with those of the right hip the fracture sustained by plaintiff might have been discovered, where the evidence showed that it was not customary among X-ray specialists to take pictures of both hips in cases like that of plaintiff.

2. Liability of physician for making wrong diagnosis, note, Ann. Cas. 1917D, 708.

Liability of physician or surgeon for failure to diagnose fracture or dislocation, note, 28 L. R. A. (N. S.) 136. See, also, 21 R. C. L. 387.

3. Degree of care required of physician or surgeon who holds self out as specialist, note, Ann. Cas. 1915D, 1124. See, also, 21 R. C. L. 386; 20 Cal. Jur., 1077.

[4] Id.—Expert Testimony—Weight of Evidence — Erroneous Instruction.—In this action against two physicians and surgeons for damages for malpractice, in refusing to instruct the jury, at the request° of defendants, that in considering whether defendants in the examination, diagnosis, treatment, and care of plaintiff's injured limb exercised ordinary care and skill, the jury could not set up a standard of their own, but must be guided in that regard "solely by the testimony of physicians," and if the jury was unable to determine "from the testimony of physicians introduced as experts what constitutes ordinary care and skill under the circumstances of this case," then there was a failure of proof upon the only standard for their guidance, and the evidence was insufficient to warrant a verdict for the plaintiff, and in instructing the jury, in effect, that if there were facts and circumstances in the case, testified to by lay witnesses, which the jury believed and which rendered the opinions given in the case by expert witnesses unreasonable, then the jury was at liberty to reject altogether the opinions of the experts, the trial court committed error which is highly prejudicial to the rights of defendants.

(1) 38 Cyc., p. 491, n. 28. (2) 30 Cyc., p. 1588, n. 83. (3) 30 Cyc., p. 1570, n. 19, p. 1592, n. 20 New. (4) 30 Cyc., p. 1587, n. 71, p. 1589, n. 90.

APPEAL from a judgment of the Superior Court of San Diego County. S. M. Marsh, Judge. Reversed.

The facts are stated in the opinion of the court.

Eugene Daney, Hubert T. Morrow and E. V. Winnek for Appellants.

Wright & McKee for Respondent.

CURTIS, J.—Plaintiff was injured in a street-car accident in the city of San Diego at about noon on September 25, 1920. He was immediately taken to the Emergency Hospital in said city. At the hospital he was examined by the defendant Edwin H. Crabtree, who, at the time of the acci-

4. Liability of physician or surgeon for negligence or malpractice, notes, 48 Am. Dec. 481; 93 Am. St. Rep. 657.

Skill and diligence required of physician or surgeon, notes, 59 Am. Dec. 397; 1 Ann. Cas. 21, 306; 14 Ann. Cas. 605. See, also, 21 R. C. L. 387; 20 Cal. Jur. 1074 et seq.

dent, was police surgeon, and as such officer had charge of said hospital, and it was his duty to give first aid attention to all persons injured in the city and brought to the hospital for treatment.    The defendant Crabtree was a regular graduate of medicine and surgery and had been engaged in the practice of his profession for about ten years.    Dr. Crabtree, after examining the plaintiff at the hospital, informed him that it was probable that there might be an impacted fracture of the left hip, but that he could not be positive about it without an X-ray, and suggested that plaintiff be taken to the St. Joseph's Hospital in said city and there have an X-ray picture taken of his injured limb.    The plaintiff acceded to this suggestion and was taken immediately to the last-named hospital.    Dr. Crabtree telephoned to the St. Joseph's Hospital that he was sending a patient there for the purpose of having an X-ray taken.    The defendant Lyell C. Kinney was on the staff of the St. Joseph's Hospital as an X-ray specialist.    He was a regular graduate of medicine and surgery, but at the time of the accident, and for some years prior thereto, had confined his practice to X-ray work.    Dr. Kinney was summoned by the hospital authorities and arrived at about the same time that plaintiff reached the hospital.    He immediately took two X-ray pictures of plaintiff's left hip.    Dr. Crabtree visited plaintiff at this hospital at about 5 o'clock on the same day.    There is a sharp conflict in the evidence as to just what took place at the hospital on the occasion of this and also on a subsequent visit made the next day by Dr. Crabtree.    As the verdict of the jury was in plaintiff's favor we must assume that the jury relied upon the testimony given by the plaintiff and his witnesses, and, for the purpose of this appeal, we must accept their testimony as showing the true facts of the case. According to the testimony on plaintiff's behalf, Dr. Crabtree, on his first visit to plaintiff at St. Joseph's Hospital, made no examination of plaintiff's injury and was there not exceeding ten minutes.    The next day at about 10 o'clock in the morning Dr. Crabtree again visited plaintiff.    On the occasion of this visit he made no physical examination of plaintiff's limb, but while at the hospital, on this visit, he received a telephone message from Dr. Kinney, who informed him that he, Dr. Kinney, had taken X-ray pictures of plaintiff's injured limb, and that he had developed these pictures,

which disclosed no evidence of bone injury. Dr. Crabtree at this time was at the hospital only about ten minutes, and after receiving the report from Dr. Kinney, and without any further or other examination of plaintiff whatever, informed plaintiff that he might go home. He advised him that the only treatment necessary for his injury was to put hot-water applications on the hip in order to relieve the pain from the sprain which plaintiff had received. Relying upon the advice of Dr. Crabtree, the plaintiff was taken home by his wife about noon of the same day. The injured limb was treated in accordance with the directions given by Dr. Crabtree. About ten days thereafter plaintiff was taken by his wife to see Dr. Crabtree at the latter's office. Plaintiff stated to Dr. Crabtree on this occasion that he was suffering intense pain from his injury and asked Dr. Crabtree to make a further examination of his limb. Dr. Crabtree replied that he was only suffering from a sprain; that he had received no bone injury; that he would probably be around in a couple of weeks, and that the only thing he could do was to apply hot water to his injury. It was about this time that the street-car company made a settlement with the plaintiff and as a part of plaintiff's claim against the company for the injuries sustained, the company paid the bills of the defendant and the St. Joseph's Hospital, for services rendered plaintiff on account of his injury. About three weeks later the plaintiff had additional X-rays taken of his injured hip and these pictures showed that plaintiff had sustained an impacted fracture of the left hip and that the hip had already healed in an unnatural position. Dr. Crabtree was informed of this fact, and he immediately called Dr. Kinney, who took X-ray pictures of the left and right hips of plaintiff. As a result of these later pictures it was evident to all concerned that plaintiff had sustained an impacted fracture of his left hip.

The testimony of the doctors and X-ray specialists, called to give expert testimony at the trial, was to the effect that an impacted fracture would not on all occasions show upon X-ray pictures taken of the injured part within a short time after the injury, and that this fact was a matter of common knowledge not only among X-ray specialists, but also among physicians and surgeons. For this reason the common and accepted practice among physicians and surgeons was not to

rely entirely upon X-ray pictures in diagnosing injuries such as that sustained by the plaintiff, but, in addition to the use of the X-ray, to make a most thorough physical examination of the injury. Dr. O'Neill, a witness on behalf of the defendants, gives perhaps as clear a statement of the matter as was given by any witness at the trial. Dr. O'Neill stated: "By custom I think that a physician is to examine the patient first and if he thinks any need of it they get an X-ray picture to help out, or to confirm their findings. They make a thorough examination, because I have seen fractures that do not show on the X-ray, but were undoubtedly fractures. And my final conclusion is based upon both the physical examination and the X-ray, on the whole group of findings. I do not depend entirely upon the X-ray or entirely upon the physical examination." The jury returned a verdict for the plaintiff and against both defendants, and from the judgment in plaintiff's favor the defendants have appealed.

Appellants advance three grounds for the reversal of the judgment: First, insufficiency of the evidence to justify the verdict; second, that the defendants, if liable at all, are severally and not jointly liable; third, errors committed by the court in its instructions to the jury.

*First.* [1] It is apparent that the evidence in this action against one defendant is materially different from that against the other, and it necessarily follows that while the evidence may be sufficient to sustain the verdict against one defendant, it may not justify the verdict against the other. [2] We will first examine the evidence as it relates to the acts of the defendant, Dr. Crabtree. When the plaintiff was brought to the Emergency Hospital, Dr. Crabtree, in charge of the hospital, gave him, at best, a hurried and superficial examination—probably, however, all that was required at this time. After this examination Dr. Crabtree gave as his opinion that the plaintiff might have sustained an impacted fracture of the left hip. He so informed plaintiff and advised him that he could not tell definitely whether such was the case without an X-ray of plaintiff's injury. At the suggestion of Dr. Crabtree, plaintiff was taken to the St. Joseph's Hospital and there had the pictures taken by Dr. Kinney. Dr. Kinney, as we have already seen, reported that these pictures did not indicate that plaintiff had sus-

tained any bone injury. Dr. Crabtree accepted this report of Dr. Kinney, and, although he visited the plaintiff at the St. Joseph's Hospital on the day of the accident and on the day following, on neither of these visits did he make any further examination of plaintiff's injured limb to ascertain whether the plaintiff had sustained the fracture as he feared he had. In other words, the testimony, fairly construed, tends to show that Dr. Crabtree, aside from the cursory examination given plaintiff at the Emergency Hospital, relied wholly upon the report of Dr. Kinney as to the condition of plaintiff's injury, and that he failed to supplement this report by a careful and thorough physical examination of plaintiff, which the testimony shows was required by the common and usual practice of physicians and surgeons in such cases. In our opinion there was sufficient evidence to warrant the jury in rendering the verdict against the defendant Dr. Crabtree.

[3] As to the defendant Dr. Kinney, it is conceded that the pictures taken by him of the plaintiff's hip were in every way correct. The fact that they did not show the fracture in plaintiff's limb is readily accounted for by the evidence that a fracture such as plaintiff sustained does not always show in an X-ray picture taken within a short time after the injury. Respondent insists, however, that Dr. Kinney was negligent in failing on the occasion of his first visit to plaintiff to take pictures of the right hip in connection with those taken by him of the left hip, in order that by comparing the pictures of the left hip with those of the right hip the fracture sustained by plaintiff might have been discovered. In this connection he contends that the testimony shows that it is customary in such cases, among X-ray specialists, in diagnosing fractures such as that sustained by plaintiff, to take pictures of both hips in order that such a comparison of the pictures could be made. In support of this contention he relies upon the testimony of Dr. Weiskotten. An examination, however, of Dr. Weiskotten's testimony fails to bear out plaintiff's claim. That portion of the testimony to which respondent has called our attention as sustaining his contention is as follows: ''Q. And that is the reason why, in cases of an injury to the hip, it is proper to take both hips for the purpose of comparison? A. It is not always customary. It is sometimes done, but it is not always customary.

Q. It is always done? A. It is not customary unless something arises to make it necessary to take the second X-ray plate, but it is not done in all cases." From this testimony it will be seen that it is not customary to take pictures of both hips unless something arises to make it necessary, and that it is not done in all cases. We fail to find in Dr. Weiskotten's testimony, or in that of any other witness in the case, when it is necessary, or in what cases it is customary, to take pictures of both hips. There is nothing in the testimony in this case to show that it was necessary to take pictures of both of plaintiff's hips, nor is there anything in the testimony to show that it was customary among X-ray specialists, in cases like that of the plaintiff, to take pictures of both hips. Dr. Kinney, in the treatment of plaintiff's injury by the use of the X-ray, was only required to use such reasonable care, skill, and diligence as are usually or customarily exercised by others in the same line of practice and work in similar localities, or in the same section of the country. (*Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 Pac. 654]; *Dameron* v. *Ansbro*, 39 Cal. App. 289, 301 [178 Pac. 874]; *Houghton* v. *Dickson*, 29 Cal. App. 321, 324 [155 Pac. 128].) There is no showing in this case that Dr. Kinney did not meet the requirements of this rule, and without such proof the evidence fails to show negligence on his part, and it is therefore insufficient to support the verdict against him.

*Second.* Our conclusion that the evidence fails to support the verdict against Dr. Kinney renders it unnecessary to discuss the claim of appellants that the liability of the defendants is several and therefore that a joint action against them will not lie. A reversal of the judgment against Dr. Kinney alone, however, will not affect the judgment against Dr. Crabtree. (*Fowden* v. *Pacific Coast Steamship Co.*, 149 Cal. 151–157 [86 Pac. 178]; *Sickles* v. *Mt. Whitney Power & Elec. Co.*, 177 Cal. 278 [170 Pac. 599].)

[4] *Third.* Appellants requested the court to give the following instruction to the jury: "The court instructs you that in considering whether the defendant in his examination, diagnosis, treatment and care of plaintiff's injured limb exercised ordinary care and skill, you cannot set up a standard of your own, but must be guided in that regard solely by the testimony of physicians; and if you are unable to

determine from the testimony of the physicians introduced as experts, what constitutes ordinary care and skill under the circumstances of this case, then there is a failure of proof upon the only standard for your guidance, and the evidence is therefore insufficient to warrant a verdict for the plaintiff.'' The court refused to give this instruction as requested by the appellants, but upon its own motion instructed the jury as follows: "You are instructed that the opinions of the doctors who have testified in this case as experts are merely advisory, and you are not bound to accept such opinions as true. You should accord to such opinions such weight as from all the facts and circumstances in the case you may believe they are entitled to receive; or you may altogether disregard such opinions in so far as you may believe from all the facts and circumstances in the case that such opinions are unreasonable.'' The supreme court of the state of Colorado reversed a judgment rendered in a malpractice action against a physician and surgeon for the refusal of the trial court to give an instruction practically in the language of the above instruction offered by the appellants and refused by the court. (*McGraw* v. *Kerr*, 23 Colo. App. 163 [128 Pac. 870–874].) In a later case the same court affirmed a judgment in an action of a similar nature where the only point made on appeal was that the court erred in giving an instruction identically like that refused by the court in this action. (*Norkett* v. *Martin*, 63 Colo. 220 [165 Pac. 256].) The court in this later case referred to and approved the ruling in *McGraw* v. *Kerr*, *supra*. The McGraw case has been cited with approval by our supreme court in the case of *Perkins* v. *Trueblood*, 180 Cal. 437–443 [182 Pac. 642], and by the district court of appeal in *Houghton* v. *Dickson*, 29 Cal. App. 331 [155 Pac. 128], and *Dameron* v. *Ansbro*, 39 Cal. App. 289–300 [187 Pac. 874]. The authorities from other jurisdictions appear to be in accord upon this question with the rulings of the supreme court of the state of Colorado and that of our own state. It necessarily follows, therefore, if this instruction refused by the court correctly stated the law, then it was prejudicial error for the court to give the second instruction above set out, which it gave upon its own motion. For in this second instruction the court told the jury that they might disregard altogether the opinions of the experts testi-

fying in the case, if, from all the facts and circumstances in the case, they believed that such opinions were unreasonable. In other words, the court in effect instructed the jury that if there were facts and circumstances in the case, testified to by lay witnesses, which the jury believed and which rendered the opinions given in the case by expert witnesses unreasonable, then the jury were at liberty to reject altogether the opinions of the experts. As we have already noted, such is not the accepted rule, and to so instruct the jury was highly prejudicial to the rights of the appellants.

Respondent in a measure concedes that the law is as above stated, but insists that this rule is inapplicable in the present case, for the reason that no expert testimony was necessary to prove the negligence of the defendants herein. This negligence, respondent contends, was the failure of the defendants to properly treat plaintiff's fractured hip. Respondent insists that it is a matter of common knowledge that where a person has suffered a fracture like that sustained by plaintiff, some method of immobilization of the injured limb must be resorted to, and that the mere application of hot water is no treatment at all for such an injury. But the negligence of defendants, if any, did not consist so much in their improper treatment of the fractured limb, as it did in their failure to discover that plaintiff's limb was fractured. Defendants concede that they did not properly treat plaintiff for a fractured hip, but they insist that they did not discover the fracture, and that they used all the care and diligence required of them under the circumstances to ascertain the fracture of plaintiff's hip. The only criticism made by plaintiff of the service rendered by Dr. Kinney was that he failed to take pictures of both the right and left hips when he first visited plaintiff, and the act of negligence charged against Dr. Crabtree was that he relied wholly upon the X-ray pictures taken of plaintiff's injury by Dr. Kinney and did not supplement his knowledge, acquired by means of these pictures, by a careful and thorough physical examination of plaintiff's hip. The questions involved in these two charges of negligence could only be solved by a resort to the knowledge of those learned in the practice of medicine and surgery and in the use and purpose of the X-ray pictures. Such knowledge is not possessed by the ordinary layman. We, therefore, are of the opinion that the rule of

law set forth in the above instruction which the court refused to give was applicable to the issues· in this case, and it was therefore error on the part of the court, prejudicial to the rights of the defendants, to give the instruction which it did and whereby it instructed the jury that the opinions of the doctors were merely advisory and that the jury were not bound to accept them, but might disregard them altogether if from all the facts and the circumstances in the case they believed them unreasonable.

Judgment is reversed.

Conrey, P. J., and Houser, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 29, 1924, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 29, 1925.

All the Justices concurred.