[Civ. No. 5090.   Second Appellate District, Division One.—August 26, 1925.]

WILLIAM SIMPSON CONSTRUCTION COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—EXPERT TESTIMONY—REJECTION BY COMMISSION.—The power of the Industrial Accident Commission to reject the uncontradicted testimony of medical experts is the same as that of a court or jury in an action before a court of justice.

[2] ID.—EXPERT TESTIMONY—WHEN CONCLUSIVE.—Whenever the subject under consideration is one within the knowledge of experts only, and is not within the common knowledge of laymen, the expert evidence is conclusive upon the question in issue, and neither the court nor the jury can disregard such evidence of experts, but, on the other hand, they are bound by such evidence, even if it is contradicted by nonexpert witnesses.

[3] ID.—CONDITION OF DECEASED AFTER INJURY—MEDICAL TESTIMONY. In a proceeding before the Industrial Accident Commission to recover compensation based upon the death of an employee following a fall from a scaffold upon which he was working, evidence of medical experts as to the condition of the deceased's skull at the time of the autopsy, the presence therein of a fracture, and of two hemorrhages, the extent and character of these hemorrhages, their origin and cause, and their probable effect upon the deceased, and whether they, or either of them, was sufficient to produce death, deal entirely with matters with which only medical men are familiar, and concerning which they alone can give any intelligent information to the Commission; and this evidence, if uncontra-

---

1. Rules of evidence applicable to industrial accident commissions, note, L. R. A. 1917D, 182.

2. See 10 Cal. Jur. 971.

dicted, is binding upon the Commission and the latter cannot reject the same and act upon their own knowledge or conclusions.

[4] Id.—Cause of Death—Presence of Hemorrhages—Expert Testimony.—In such proceeding, where no one saw the deceased immediately preceding or at the time of the fall, and there was nothing in the appearance or condition of either the pontine hemorrhage or the hemorrhage caused by the injury to indicate which one occurred first in point of time, and the doctors testified that either one was sufficient to cause death, and the evidence showed that deceased lived an hour and one-half after the fall, and there was absolutely nothing to show that the pontine hemorrhage could not have occurred immediately following the fall or during the period deceased lived after receiving the blow from the fall, the Commission was not bound by the opinion of medical experts that the proximate cause of death was the stroke of apoplexy.

[5] Id.—Death from Injury—Absence of Evidence—Unauthorized Award.—In such proceeding, with the opinions of the experts that the proximate cause of decedent's death was the stroke of apoplexy eliminated, the evidence before the Commission having been that there were found within the skull of the deceased, the next day after his death, two hemorrhages, one due to natural causes and the other due to an injury, either of which was capable of causing death, and there having been absolutely no evidence from any source to indicate that the death of the deceased was due to the injury, an award in favor of the dependents of the deceased was unauthorized.

[6] Id.—Burden of Proof—Opinion Based on Conjecture.—In such a proceeding, the burden of proof is upon the applicant to prove that the injury received was one which would sustain an award; and where the evidence is such that any opinion as to the proximate cause of the death of deceased is a mere surmise and conjecture and not based upon any foundation sufficient to support a finding of fact, an award in favor of the dependents must be annulled.

---

(1) 22 C. J., p. 728, n. 71, 72, 73, p. 729, n. 74, 75, 76, 77; p. 730, n. 78, p. 731, n. 79.   (2) 22 C. J., p. 731, n. 79.   (3) 22 C. J., p. 731, n. 79; Workmen's Compensation Acts, C. J., p. 115, n. 32. (4) 22 C. J., p. 731, n. 79.   (5) Workmen's Compensation Acts, C. J., p. 115, n. 37.   (6) Workmen's Compensation Acts, C. J., p. 115, n. 26.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission.   Award annulled.

The facts are stated in the opinion of the court.

George W. Seith and Louis P. Pink for Petitioners.

Warren H. Pillsbury for Respondents.

, CURTIS, J.—Petition to review an award made by the Industrial Accident Commission against petitioners in favor of Carrie I. and Dorothy I. Tiefenbach on account of the death of Gus Tiefenbach, caused by injuries sustained by him while in the employ of the petitioner, the William Simpson Construction Company. The evidence before the Commission showed substantially the following state of facts: The deceased Tiefenbach was in the employ of said construction company as a carpenter. On July 31, 1924, while in such employment and while working on a scaffold about twelve feet from the ground, he fell therefrom to the ground. He died about one and one-half hours thereafter. The next day an autopsy was performed upon his body, and the doctors performing the autopsy found an extensive subdural hemorrhage covering the base and lateral surfaces of the brain, and a basal fracture running across the base of the middle fossa of the skull. There appears to be no doubt that this subdural hemorrhage was due to the basal fracture of the skull and that this fracture was occasioned by the fall of deceased from the scaffold to the ground. This fracture, with the consequent subdural hemorrhage, the doctors testified, was sufficient to cause death. The doctors further found a pontine hemorrhage in the brain of the deceased, which they testified was caused by a stroke of apoplexy, and they gave as their opinion that the stroke preceded, and was the cause of, the fall, and was therefore the proximate cause of the death of decedent. There was nothing in the physical appearance or condition of either the pontine hemorrhage, or the fracture of the skull and the subdural hemorrhage caused thereby, to indicate which of the two occurred first in point of time. The only reason assigned by the medical experts, the two doctors who were present at the autopsy, one of whom performed the same, for their statement that the apoplectic stroke preceded the fall, was that the pontine hemorrhage was not traumatic, that is, it was not due to any wound or injury, but was dependent upon, or was the result of, a diseased condition of

74 Cal. App.—16

the deceased. The Commission disregarded the opinion of the medical experts and found that the fracture of the skull caused by the fall and subdural hemorrhage therefrom were the proximate cause of Tiefenbach's death, and made an award in favor of his dependents. **[1]** Petitioners contend that the Commission was without authority to reject the uncontradicted testimony of the medical experts that the apoplectic stroke preceded the fall and was therefore the proximate cause of decedent's death, and render an award based upon a finding that death was due to a cause other than that given therefor by the medical experts. The power of the Commission to reject such evidence is the same as that of a court or jury in an action before a court of justice. In Corpus Juris the power of the court or jury to reject the testimony of experts is stated as follows: "The weight to be given to opinion evidence in any case, whether the statement is of the inference or conclusion of an observer or the judgment of an expert, is, within the bounds of reason, entirely a question for the determination of the jury or of the court, when trying a question of fact, taking into consideration the intelligence, learning, and experience of the witness, and the degree of attention which he gave to the matter. The judgments of experts or the inferences of skilled witnesses, even when unanimous and uncontroverted, are not necessarily conclusive on the jury, but may be disregarded by it or by the court trying an issue of fact, unless the subject is one for experts or skilled witnesses alone, and the jury cannot properly be assumed to have, or be able to form, correct opinions of their own, under which circumstances the unanimous evidence of properly qualified witnesses has been regarded by some courts as conclusive." (22 Cor. Jur., pp. 728 to 730.) Assuming that the law is correctly stated in this quotation from Corpus Juris, it will be noted that the court or jury may reject the testimony of experts, even though uncontradicted, except where "the subject is one for experts or skilled witnesses alone, and the jury cannot properly be assumed to have, or be able to form, correct opinions of their own, under which circumstances the unanimous evidence of properly qualified witnesses has been regarded by some courts as conclusive."

In this state it has frequently been held that the proper or usual practice and treatment by a physician or surgeon in the examination and treatment of a wound or injury, is a question for experts and can only be established by their testimony. (*Perkins* v. *Trueblood,* 180 Cal. 437, 443 [181 Pac. 642]; *Houghton* v. *Dickson,* 29 Cal. App. 321, 324 [155 Pac. 128]; *Dameron* v. *Ansbro,* 39 Cal. App. 289, 300 [178 Pac. 874]; *Pearson* v. *Crabtree,* 70 Cal. App. 52 [232 Pac. 715].)

[2] The rule to be drawn from these decisions, as we understand them, appears to be that whenever the subject under consideration is one within the knowledge of experts only, and is not within the common knowledge of laymen, the expert evidence is conclusive upon the question in issue. It follows that in such cases, neither the court nor the jury can disregard such evidence of experts, but, on the other hand, they are bound by such evidence, even if it is contradicted by nonexpert witnesses. The same rule would, of course, apply to a proceeding before the Industrial Accident Commission. Under this rule, the Commission, in the present proceeding, could not reject the evidence of the medical experts when testifying upon any subject peculiarly within their own knowledge. The same rule would apply as to opinions of the medical experts upon a subject solely within their professional knowledge, and not within the knowledge of the ordinary individual. [3] In this proceeding the evidence of the medical experts as to the condition of the deceased's skull at the time of the autopsy, and the presence therein of the fracture, and the two hemorrhages, the extent and character of these hemorrhages, and their origin and cause, and the probable effect upon the deceased, and whether they, or either of them, was sufficient to produce death, dealt entirely with matters with which only medical men are familiar, and concerning which they alone could give any intelligent information to the Commission. This evidence, being uncontradicted, was binding upon the Commission and, according to the above rule, the latter could not reject the same and act upon their own knowledge or conclusions. [4] We seriously question, however, whether this rule can be extended to include the opinion of the medical men that the stroke of apoplexy preceded, and was the

cause of the fall, under the facts in evidence before the Commission. As already stated, no one saw the deceased immediately preceding, or at the time of, the fall. There was nothing in the appearance or condition of either the pontine hemorrhage, or the hemorrhage caused by the injury, to indicate which one occurred first in point of time. The doctors testified that either one was sufficient to cause death. The only reason assigned by them for their opinion that the fall was preceded by the stroke of apoplexy, was that the pontine hemorrhage was not traumatic, that is, it was not caused by any injury sustained by the deceased. The evidence shows that the deceased lived an hour and one-half after the fall, and there was absolutely nothing to show that the pontine hemorrhage could not have occurred immediately following the fall or during the hour during which the deceased lived after receiving the blow from the fall. One of the medical men, Dr. Brown, in a letter written to the petitioner, the General Accident, Fire and Life Assurance Corporation, and which was before the Commission, refers to the "history of the case" as showing that the deceased "was working on a scaffold on the outside of a building, when without any provocation he fell to the ground some distance below. The man in falling was said to have made no effort to catch or protect himself." No such evidence was produced before the Commission. On the other hand, there was no evidence that anyone witnessed the fall of the deceased from the scaffold. The superintendent of the construction company testified that shortly before the fall, probably fifteen or twenty minutes, his attention was attracted to the deceased as "acting rather strange at that time." Deceased was then working on the balcony of the church, up about fourteen feet from the floor, and the superintendent had him changed to the scaffold on which he was working at the time of the fall. But there was no evidence to show that this conduct of deceased was in any way attributable to, or had any connection whatever with, the stroke of apoplexy subsequently sustained by him, and neither of the medical witnesses bases his inference as to the proximate cause of decedent's death upon this testimony of the superintendent. Under these circumstances, the opinion of the doctors that the stroke of apoplexy occurred prior to the fall was, in our

opinion, mere conjecture on their part and not based upon any evidence warranting such a conclusion. A somewhat similar situation was before the court in *Eastman Co.* v. *Industrial Accident Commission,* 186 Cal. 587, 591 [200 Pac. 17, 19], and in disposing of the question the court said: "The evidence of the physicians is no doubt conclusive of the fact that Ellsworth had a diseased heart. Their opinions that he did or did not die from this affliction are of little value, for· they are agreed that there was nothing divulged from the autopsy to indicate that death was from heart failure, and they are agreed that the injuries received from his being run over by the truck were such as would cause instant death." Our conclusion, therefore, is that the Commission was not bound by the opinion of the medical experts that the proximate cause of the death of the deceased was the stroke of apoplexy.

It does not follow, however, from this conclusion that the award made by the Commission can or should be sustained by this court. While there was no evidence in the case which would justify the opinion of the doctors that the pontine hemorrhage preceded the fall, we are further of the opinion that there was no evidence before the Commission which would justify it in finding that the death of the deceased was due to the fall and not induced by the apoplectic stroke.

[5]   With the opinions of the experts that the proximate cause of decedent's death was the stroke of apoplexy eliminated, the evidence before the Commission was that there were found within the skull of the deceased, the next day after his death, two hemorrhages, either one of which was capable of causing death—one was due to natural causes, and death therefrom would not entitle the dependents of the deceased to any award of compensation; the other was due to an injury received under circumstances which would entitle said dependents to an award of compensation, if death ensued therefrom. There was absolutely no evidence from any source to indicate that the death of the deceased was due to the latter injury. Such evidence, in our opinion, would not support an award in favor of said dependents.

[6]   In the first place, the burden of proof is upon the applicant to prove that the injury received was one which

would sustain an award. "It must be conceded that the burden is upon the applicant for compensation to show that the injury arose out of as well as in the course of the employment; and there is no presumption, as contended by respondents, that because an injury occurs in the course of the employment it arises out of or because of that employment." (*Eastman Co.* v. *Industrial Accident Commission, supra.*)

In the second place, if this evidence before the Commission was insufficient to justify the expert witnesses in concluding that apoplexy was the proximate cause of his death, we think for like reasons that it is insufficient to justify a conclusion on the part of the Commission that death was due to the fall, uninfluenced and uninduced by the stroke of apoplexy. With the evidence in such a state, any opinion as to the proximate cause of the death of deceased was a mere surmise and conjecture and not based upon any foundation sufficient to support a finding of fact. As was said in *In re Sanderson's Case,* 224 Mass. 558 [113 N. E. 355, 357], "It is plain that if the hemorrhage was due to natural causes, and was not produced by the fall, it could not be found to be an injury arising out of the employment. It is plain that the inference drawn by the Industrial Accident Board from the evidence, that the hemorrhage followed the injury and resulted therefrom, is based merely upon surmise, speculation and conjecture, and does not rest upon a foundation of proof by a preponderance of the evidence. It may be the dependent is correct in her contention that the death of the employee was due to a fall from the wagon, but other theories and conjectures are quite as probable." (Citing cases.)

From these considerations, we think it must necessarily follow that the evidence was not sufficient to support the award, and therefore that it must be, and it is hereby, annulled.

Conrey, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 22, 1925, and a petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 22, 1925.