Argued May 23; affirmed May 31, 1933

## FOOTT *v.* LINDSTROM & FEIGENSON
### (22 P. (2d) 321)

*Omar C. Spencer,* of Portland (Carey, Hart, Spencer and McCulloch, and David L. Davies, all of Portland, on the brief), for appellant.

*Guy L. Wallace,* of Portland, for respondent.

CAMPBELL, J. In 1925, defendant, a corporation, as the contractor, was constructing the Burnside bridge across the Willamette river at Portland. It contracted with plaintiff's assignor for the earthy material to make up the fill on the west and east approaches to the structure. The price agreed upon for this material

was $0.50 per cubic yard delivered. Plaintiff claims there was delivered, under said contract, 19,216 yards, amounting to $9,608 and that defendant paid thereon $7,404, leaving a balance due of $2,204.

Defendant contends that the quantity delivered at said price amounted to only $7,407.50; admits the payment of $7,404 and tenders $3.50 in court.

The cause was tried to a jury and a verdict returned for plaintiff in the full amount claimed. Judgment was entered thereon and defendant appeals.

The real controversy between the parties is whether the "fill material" should be measured as delivered in the trucks or after being flushed into place with water.

The "fill material" used in the work was taken from the bed of the Willamette river about one mile above the dock of plaintiff's assignor, conveyed on barges to said dock, screened and washed, separated into ordinary gravel, small boulders, sand and sediment and each deposited in its own separate bunker, from where the sand and sediment (the "fill material"), while still damp, was dumped into trucks, hauled to the fills, unloaded and immediately flushed into place with water.

In the trial of the case, plaintiff produced its testimony as to quantity delivered, the amount paid and the balance due, and rested its case.

The defendant thereupon introduced evidence showing the cubic contents of the space which the "fill material" so delivered occupied; that he based the quantity of "fill material" necessary on the engineer's estimate of the quantity required to fill the space. The testimony of defendant's expert witness, John Zoss, assistant engineer in charge of the work, was to the effect that he selected this material because it would

not shrink and that while the fill was being made he made tests whether this material delivered *in place* would shrink, and found that the shrinkage was practically nothing.

However, plaintiff claims that the "fill material" was to be measured in the truck before being washed into place. The jury evidently accepted plaintiff's theory.

■ This assignment of error is based on the court permitting plaintiff's witnesses to answer certain questions based on a hypothesis of facts of which they had personal knowledge.

When defendant rested its case, plaintiff called one James A. C. Tait who had 20 years experience in the building material and sand and gravel business. He testified of his experience in making fills such as was used on the Burnside bridge approaches; that he lately made a fill of unscreened rover material on the approach to the Portland airport of 50,000 cubic yards. He also testified that he was familiar with the material that went into the fills on the Burnside bridge. He was then asked:

"Q. As a result of your experience, Mr. Tait, does it take more quantity of loose material to fill a given space of solid?

"A. Based on the fills we make, it does take more.

"Q. How much more?

"A. I would say there is twenty-two per cent shrinkage".

This testimony was objected to by defendant and the objection overruled.

Plaintiff called as a witness in rebuttal, W. E. Buell, a qualified civil engineer, a resident of Portland for eight years and who had had experience on filling jobs. He was asked:

"Q. Are you familiar with the factor of shrinkage as between loose material such as went into the approaches of the Burnside bridge and solid?

"A. Yes.

"Q. What is that?

"A. A material such as that would vary from a minimum of about ten per cent up to possibly thirty-five or forty per cent. In calculating or estimating a yardage from a dredge fill, for instance, you would ordinarily add approximately ten per cent to take care of shrinkage and waste into a given area, and where the material might be more or less dry, the percentage of extra material delivered in trucks or by scraper or other known methods would vary up to, as I say, thirty-five or forty per cent. It would depend somewhat upon the degree of moisture in the content and in the fill itself and the way it was placed".

On motion to strike the answer, the court struck it all out except:

"Material such as that would vary from a minimum of about ten per cent up to possibly thirty-five or forty per cent".

These questions to the witnesses Tait and Buell were objected to on the ground that no proper hypothesis was laid for such questions. But both witnesses testified that they were familiar with the fills on the Burnside bridge and the material out of which they were made.

Where an expert witness, by personal knowledge and observation, is familiar with the facts on which his conclusion is based, and those are the facts which have been testified to in the cause, there is no necessity of supplying the hypothesis. "In such an instance, he supplies both the premise and conslusion". *Lippold v. Kidd,* 126 Or. 160 (269 P. 210, 59 A. L. R. 875). *Hansen-Rynning v. Oregon-Washington etc.,* 105 Or. 67

(209 P. 462). In his case in chief, plaintiff's evidence showed the kind of material and its condition at the time of delivery. The question to be determined was whether such material would shrink upon being washed into place.

■ ■ This assignment is predicated upon the court permitting the question to be asked plaintiff's witness, Tait, regarding the custom of selling such fill material by truckload or truck measure.

The witness, over the objection of defendant, was asked if such material would be sold by truck measurement.

"A. We have delivered stuff by truck measurement, sold it by truck measure.

"Q. Do you invariably do that?

"A. No, not invariably. We take jobs both ways".

It may have been a waste of time to introduce such testimony. It proved nothing and, if erroneous, was harmless.

Finding no error, the judgment of the circuit court will be affirmed. It is so ordered.

ROSSMAN, BEAN, and BAILEY, JJ., concur.