Argued March 19; affirmed April 30, 1935

COBB *v.* SPOKANE, PORTLAND & SEATTLE
RAILWAY CO. ET AL.

(44 P. (2d) 731)

*Charles A. Hart,* of Portland (Carey, Hart, Spencer & McCulloch, of Portland, on the brief), for appellants.

*Marvin K. Holland,* of Portland (J. Kenneth Kaseberg, of Portland, on the brief), for respondent.

BEAN, J. The doctors' testimony tended to show that plaintiff would have gone on, at least for years, without any trouble, and probably for life, without the loss of his leg.

The theory of plaintiff is that his injury was due to defendants' negligence and aggravated the Buerger's disease, which, until then, had not bothered him, and made necessary the amputation.

The answer filed by defendants admitted that the plaintiff's right foot was seriously affected, to the extent that amputation would presently be required, but asserted that the cause was an infection which could not be checked because plaintiff was afflicted with the malady known as "Buerger's disease", and denied that there had been any such accidental injury as alleged to have happened on October 14, 1931.

■ The first assignment of error is that the court erred in overruling defendant's objection to the hypo-

thetical questions, and in receiving testimony given in answer to such questions. The first question was as follows:

"Assume that Mr. Cobb had Buerger's disease before; that it hadn't caused him any trouble, any pain in the calf of the leg, or otherwise; he had been able to carry on his work as car inspector and do work around the house and yard without any ill effect, and that on the fourteenth day of October, 1931 at night while running in a freight yard he had an iron brake shoe weighing about 10 pounds in his right hand, he stumbled in a hole, fell in a heap, the brake shoe coming in contact with the instep of his right foot, discoloring it; immediate pain set in and causing a pain and sore on top of his foot, leaving a scar a couple of inches or so back of the second toe, the scar that you found. Would such a trauma have any effect upon an already existing Buerger's disease?"

The witness answered:

"Yes, sir. * * * It would damage the extremity, causing further damage to the blood vessels, and might result in gangrene; might result in causing ulcers, sores, diminished tissue resistance."

The questions were objected to by defendants as not being proper hypothetical questions. It will be noticed that the interrogatory assumed that Mr. Cobb had Buerger's disease before, that it had not caused him any trouble, etc. We do not think that it was necessary to repeat in the question before each clause the word "assume", but that the whole statement is assumed with the exception of reference to "the scar that you found". The whole question is framed as one sentence. It may not be perfect rhetoric, but we think the jury understood that it asked for the opinion of Dr. Rosenblatt, based on the hypothesis. It was already in evidence that the doctor found a scar on the plaintiff's foot. Dr. Rosenblatt and Dr. Brill both testified,

previous to these questions, concerning their finding this scar and the condition of Mr. Cobb. It does not seem that it was possible for these expert witnesses, in making their answers, to consider matters of which the jury was not advised. We think the question was a fair hypothetical one.

The most serious objection to the hypothetical questions which defendants make "is the inclusion of an unqualified assertion that the scar observed by the doctors in their examination of plaintiff, and the condition in which plaintiff's foot was found, were the result of the alleged accident". We do not so understand the purport of the question, but rather, assuming that a brake shoe had come in contact with the instep of the foot, the inquiry was as to the physicians' opinions and as to what effect it would have, assuming that plaintiff already had Buerger's disease.

■ The hypothetical question propounded to Dr. Brill, and his answer, were as follows:

"Q. Assuming, Doctor, that Mr. Cobb was able to do normal manual work of car repairing and car inspecting although he had Buerger's disease in the veins or arteries; had been able to do that work up to October 14th, 1931 without any pain or without any ill effect and never had any pain in his legs or feet, and that on October 14th, 1931 while carrying a ten-pound iron weight in his hand, a brake shoe, he fell in a heap with part of the weight of the brake shoe at least coming on the instep of his right foot and discoloring it, causing an opening; it healed up and left a scar which you have examined, and that since that time he suffered pain and the limb and foot grew into the condition that you found it. State what part the accident had to do with the condition of this man."

"A. I would say the accident had a very definite development upon the decaying process and the eventual loss of the leg."

Defendants state in their brief: "Since Dr. Rosenblatt and Dr. Brill had examined and treated plaintiff they could properly have been asked to express opinions as to plaintiff's condition, based upon their personal observation. In such a situation there is no occasion for a hypothetical question; the witness supplies both premise and conclusion." This is no doubt correct as applied to the contention of defendants, after the doctors saw and treated him, but there were the other matters that occurred before, of which the doctors had no knowledge, that it was necessary to mention as the basis of the hypothetical question.

The testimony in regard to the facts assumed by the interrogatories was before the jury so that the jury could determine the truth or falsity of such facts, and all of the necessary facts were embraced in the interrogatory upon which the expert could base an opinion.

It is also urged that the hypothetical questions do not embrace all of the facts necessary for the foundation of the expert's opinion for the reason that it does not include the development of the infections after the injury. The question, as it will be seen, assumes that after the injury "immediate pain set in and causing a pain and sore on top of his foot". We do not think it was necessary for the question to inform the physicians whether or not this was an indication of infection or gangrene, but that it was better to describe the condition as a patient would describe the same to his physician and let the physician say whether it was infection or gangrene. The damages sought in this case were for an aggravation of the plaintiff's existing condition, namely, Buerger's disease, and therefore it was competent for the physicians to explain to the jury what, in their opinion, would be the effect of the injury, if they found that there was such an injury. The opinion of an

expert witness may properly be based on both a hypothetical state of facts and also on facts of which the witness has knowledge, if he has previously detailed those facts to the jury: *Perkins v. Monongahela Valley Traction Co.*, 81 W. Va. 781 (95 S. E. 797, 800) ; *Washington, Alexandria & Mt. V. R. Co. v. Lukens*, 32 App. Cas. (D. C.) 442, 458; *State v. Harris*, (Mo.) 177 S. W. 362.

As quoted in defendants' brief, from the case of *Lippold v. Kidd*, 126 Or. 160, 166 (269 P. 210, 59 A. L. R. 875), the court said:

"\* \* \* It is true, that if the expert testifies to a conclusion based upon a premise with which he has become familiar through personal observation, the question which elicits from him the conclusion need not be a hypothetical one. In such an instance he supplies both premise and conclusion. But where he is unfamiliar with the premise and is asked to express a conclusion, a premise must be stated to him in a hypothetical form: Wigmore on Ev. (2d ed.) § 676; Jones, Com. on Ev. (2d ed.), §§ 1325 and 1333."

In the present case, the expert witnesses were not asked to testify to an opinion based upon a premise with which they had been familiar through personal observation, except in part, and we think it was necessary for the hypothetical question to cover the other history of the facts relating to the injury. It was further stated by the court in *Lippold v. Kidd*, supra, as follows:

"\* \* \* The expert witness is granted the privilege of expressing to the jury an opinion because his superior training enables him to arrive at a conclusion which is more likely to be sound than that of the average juror. But all opinions are based upon facts; generally the recipient of an opinion is at a loss to know what use he may advisedly make of an expert's opinion unless he also knows what facts the expert took for granted when he formulated his conclusion." See *De*

*Donato v. Wells,* 328 Mo. 448 (41 S. W. (2d) 184, 82 A. L. R. 1331).

■ Matters relating to hypothetical questions are generally within the discretion of the trial court and if the adverse party wishes additional facts laid before the witness he may do so on cross-examination. It is not necessary to include every detail in a hypothetical question: *Crosby v. Portland Ry. Co.,* 53 Or. 496, 511 (100 P. 300, 101 P. 204) ; Wigmore, Ev. § 682. A party has the right to lay before the jury by hypothetical questions scientific inferences properly deducible from the facts claimed to be proved according to his version of the case: 11 R. C. L. 578, 579, §§ 10 and 11. Where the condition of the patient has been testified to by a physician, as in the present case, it is not necessary to again embody that information in a subsequent hypothetical question: *Standefer v. Fleming,* (Mo. App.) 298 S. W. 134; *Wells v. Davis,* 22 Utah 322 (62 P. 3). It is always permissible for an expert in answering hypothetical questions to use information he has gained from an examination where such information has already been testified to the jury: Annot. 82 A. L. R. 1340, et seq.

■ The objection made by counsel to the hypothetical question, on the ground that it includes facts not in evidence or does not include facts that are in evidence, did not point out the facts improperly included or omitted: *Hamilton v. Kelsey,* 126 Or. 26, 42 (268 P. 750); *Goldfoot v. Lofgren,* 135 Or. 533, 539–540 (296 P. 843).

■ The cross-examination in the present case was very searching. Any error committed by the reception of the hypothetical question, that it does not include all of the facts, is rendered harmless by bringing out those facts on examination: *Goldfoot v. Lofgren,* supra; Rogers, Expert Testimony (2d Ed.) 67, 68.

 Counsel for defendant objected to testimony of Dr. I. C. Brill, which tended to show that he had had a discussion with Drs. Newcastle and Foster in regard to Cobb's case, but did not state the details. We think this testimony verges upon hearsay and should not have been admitted, but we fail to see how it could possibly prejudice defendant's case so as to warrant a reversal.

We think the case was very closely and very fairly tried. There are no objections taken to the instructions of the court to the jury. There was no motion for non-suit or directed verdict. The testimony is not all before us, but, from what we have, and considering the assignments of error, we are thoroughly convinced that there is no reversible error in the record.

██ Plaintiff asks for the assessment of a 10 percent penalty under section 7-514, Oregon Code 1930. We think that the appeal was taken in good faith and that the penalty should not be imposed. The want of probable cause for taking the appeal does not appear: *Lewis v. Continental Casualty Co.,* 135 Or. 170, 173 (295 P. 450).

The judgment of the circuit court should be affirmed. It is so ordered.

CAMPBELL, C. J., and RAND and BAILEY, JJ., concur.