Argued October 14; reargued November 16; reversed
December 21, 1937

CARNINE *v.* TIBBETTS

(74 P. (2d) 974)

In Banc.

*James Arthur Powers*, of Portland, for appellant.
*R. A. McCourry*, of McMinnville, for respondent.

BAILEY, J. This action was instituted by Emma Carnine against defendants E. N. Tibbetts and Roscoe S. Steward to recover damages for personal injuries suffered by her in a collision between automobiles driven by the defendants while she was a passenger in the car driven by the defendant Steward. From a judg-

ment in her favor for $5,000 against the defendant Tibbetts the latter appeals.

The accident out of which this action arose occurred February 29, 1936, on the Oregon Coast highway in the business district of the town of Ocean Lake. The action was instituted in December of that year, and the sum then asked as damages was $5,000. On March 2, 1937, the plaintiff filed an amended complaint, increasing her demand to $15,000 and alleging that she was severely and permanently injured and disabled as the proximate result of the negligence of the defendants.

The allegations of the amended complaint setting forth the injuries sustained by the plaintiff differ somewhat from those of the original complaint, and we here quote the allegations of the amended complaint, writing in italics the specifications which it has added to the original complaint, and replacing, within brackets, what it omits from that pleading:

"A severe bruising and wrenching of her body; a severe shock to her nervous system; deep and severe bruises and contusions on her head and scalp; *bruised and broken nerves and blood vessels on top of her head and in the region of her right ear*; a concussion of the brain resulting in otitis media; nose bleeding; *bleeding from the right ear*; severe headaches; dizziness; *numbness of her lower limbs*; partial loss of hearing *in the right ear*; traumatic injuries to her *neck*, spine and back; *breaking or loosening of the right pelvic or hip bone from the backbone (sacrum)*; a [serious] sacro-iliac [strain] *slip*, from which she has suffered, and does now continue to suffer great pain, disability and discomfort, and which has caused her to have to wear constantly a leather brace *around and about her hips to hold said bones in place,* all to her great discomfort and distress, from which said injury plaintiff will continue to suffer great pain, *disability* and discomfort throughout the remainder of her life; *internal*

*injuries to her generative organs resulting in abnormal, irregular and excessive menstrual flow."*

It is further alleged, both in the original and the amended complaint, that by reason of the injuries which plaintiff has suffered she "is permanently injured and disabled and her health is permanently impaired".

The cause came on for trail on March 9, 1937. On the previous day the defendants had filed a joint motion for an order requiring the "plaintiff to submit to a physical examination by a doctor selected or chosen by the defendants, to-wit: ———, who shall submit his findings to defendants in order that the said defendants may be apprised of the physical condition of the plaintiff and thus be enabled to prepare for the trial and defense of this action, and that such examination be made on or before March 9, 1937, the date that this case has been set for trial." The motion also asked for an alternative order to the effect that "the complaint shall be dismissed" upon the noncompliance of plaintiff with the court's order requiring her to submit to a physical examination. This motion was denied on the date on which it was filed.

At the commencement of the trial, after the jury had been selected and sworn and before the opening statements had been made, the defendants orally renewed the motion previously made by them, requesting a medical examination of the plaintiff at that time or sometime during the trial, "either by a doctor selected by the defendants or a doctor designated by the court". In the motion the defendants directed attention to the fact that the amount of damages requested had been increased from $5,000 to $15,000. This motion was resisted by counsel for plaintiff, on the ground that the court had already acted on the motion previously filed

by the defendants, and for the further reason that the "plaintiff had been examined by a number of physicians and that 'all those doctors, at least most of them, will be here to testify to the jury in regard to her condition' ". It was further stated by plaintiff's counsel that in view of the fact that she had been examined by a number of doctors called by her and because of the nature of her injuries the plaintiff had refused to submit to an examination by other doctors. The defendants thereupon advised the court that they would be put to a great disadvantage "in trying to meet the allegations set forth in the amended complaint", and stated that it was necessary to have the plaintiff examined by some other doctor, either selected by the defendants or appointed by the court, and that there was no objection on the part of defendants to having the plaintiff's doctors present at such examination. The court, without stating any reason, denied the motion.

The first question with which we are confronted is whether or not the court has authority to require the plaintiff in a personal injury case to submit to a physical examination by medical experts either selected by the defendant or designated by the court. There is, as far as we have been able to ascertain, no express statutory authority in this state granting the court such power. Therefore, if such right does exist, it must derive from the inherent general power of the court. The question has not been directly passed upon heretofore by this court.

The supreme court of Missouri in 1873, in the case of *Johnson v. Hoffman,* 53 Mo. 504, without discussing the matter at length, decided that trial courts did not have inherent power to order a physical examination. Four years later, however, the Iowa supreme court in a well-considered opinion, in *Schroeder v. Chicago R. I. &*

*P. R. Co.,* 47 Iowa 375, held to the contrary, stating that the object of all court litigation was as far as possible to arrive at the truth and to administer justice, and that: "It is true, indeed, that on account of the imperfections incident to human nature perfect truth may not always be attained, and it is well understood that exact justice cannot, because of the inability of courts to obtain truth in entire fullness, be always administered. We are often compelled to accept approximate justice as the best that courts can do in the administration of the law. But, while the law is satisfied with approximate justice where exact justice cannot be attained, the courts should recognize no rules which stop at the first when the second is in reach."

Following that Iowa decision the states of Alabama, Arkansas, California, Colorado, Connecticut, Georgia, Indiana, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri (which reversed its earlier ruling), Nebraska, Nevada, New Jersey, North Carolina, North Dakota, Ohio, Pennsylvania, Tennessee, Virginia, Washington, West Virginia, and Wisconsin have reasserted the rule therein enunciated. It is unnecessary to set forth the numerous authorities from the foregoing states, as most of them, with the exception of *Flythe v. Coach Co.,* 195 N. C. 777 (143 S. E. 865), and *Woodruff v. Gilliam,* 116 W. Va. 101 (179 S. E. 873), may be found collated in *Lane v. Spokane Falls & Northern Ry. Co.,* 21 Wash. 119 (57 P. 367, 46 L. R. A. 153, 75 Am. St. Rep. 821) ; *South Bend v. Turner,* 156 Ind. 418 (60 N. E. 271, 54 L. R. A. 396, 83 Am. St. Rep. 200) ; *Austin & N. W. R. Co. v. Cluck,* 97 Tex. 172 (77 S. W. 403, 64 L. R. A. 494, 104 Am. St. Rep. 863, 1 Ann. Cas. 261) ; annotation, 51 A. L. R. 183, following the opinion in *Brown v. Hutzler Bros. Co.,* 152 Md. 39 (136 Atl. 30, 51 A. L. R. 177), and prior annotations therein mentioned. See

also: 3 Jones's Commentaries on Evidence (2d Ed.), §§ 1383-1386, inclusive; 14 R. C. L. 696, § 14; 4 Wigmore on Evidence (2d Ed.), § 2220; 1 Thompson on Trials (2d Ed.), 717, § 859; 17 C. J. 1052, § 357.

The state of Washington, since its first decision on this point in the case of *Lane v. Spokane Falls & Northern Ry. Co.*, supra, has provided by statute for the physical examination of parties before the court: *Finn v. Bremerton*, 118 Wash. 381 (203 P. 971). New Jersey, Delaware, and Florida are other states that have provided by legislation for such physical examination; *Andrus v. Fomfara*, 3 N. J. M. 261 (127 Atl. 788); *Bowing v. Delaware Rayon Co.*, (Del.) 190 Atl. 567; *State ex rel. Carter v. Call*, 64 Fla. 144 (59 S. 789, 41 L. R. A. (N. S.) 1071). The state of New York, where the majority rule was both affirmed and denied by the inferior courts, provided by legislative enactment (Laws 1893 chapter 721; Code of Civil Procedure, § 873) for the physical examination of a plaintiff.

The following states have announced the view that courts do not have power to order such physical examination: Louisiana, Massachusetts, Montana, Oklahoma, Texas, and Utah. See the authorities above mentioned, for citation of cases following the minority rule.

The reason for the majority rule is well stated in 3 Jones's Commentaries on Evidence (2d Ed.), § 1383, as follows:

"Most of the judiciary recognize that if a court is powerless to require a plaintiff to submit himself to a physical examination to the end that the truth as to the nature, effect and possible duration of his injuries may be ascertained, the administration of justice becomes tinged with partiality. The plaintiff, by filing suit, has made his injuries the subject of judicial investigation, but retains the power to stop that investigation at the point where a discovery of actual facts would do him

harm. Under such circumstances courts may be made instruments of the most gross injustice. The object for which courts are instituted may be defeated. If the plaintiff's claim is meritorious; if he has suffered the injuries of which he complains and on account of which he prosecutes his action, what has he to fear from the most rigid examination? If his claim is such as the court should enforce, it could only be strengthened by additional proof."

A more comprehensive statement in the same tenor is found in 14 R. C. L. 696, § 14, where it is pointed out that, "Where a person appeals to the court for justice he impliedly consents to the doing of justice to the other party and impliedly agrees, in advance, to make any disclosure which is necessary to be made in order that justice may be done."

 The view of the courts adopting the majority rule, upholding the right to order physical examination, is ably summarized in 3 Jones's Commentaries on Evidence (2d Ed.), § 1385, as follows:

"1. Trial courts have the power to order a medical examination by experts of the person of the plaintiff seeking a recovery for personal injuries. 2. A defendant has no absolute right to demand the enforcement of such an order, the motion therefor being addressed to the sound discretion of the trial court. 3. The exercise of such discretion is reviewable by an appellate court, and may be corrected in case of abuse. 4. The examination should be applied for and made before entering upon the trial, and should be ordered and had under the direction and control of the court whenever it fairly appears that the ends of justice require the disclosure or ascertainment of important facts which can only be disclosed, ascertained and fully elucidated by such an examination, and when the examination may be made without injury to plaintiff's life or health or the infliction of serious pain. 5. Refusal of the motion, where the circumstances appearing in the record present a

reasonably clear case for examination under the rule stated, is such an abuse of the discretion lodged in the trial court as to warrant reversal of a judgment in plaintiff's favor. Such an order, it is said, may be enforced, not by punishment as for a contempt, but by staying or dismissing the action.''

It is not here necessary to set forth the argument which has been advanced in favor of the minority rule, inasmuch as the majority rule, in our opinion, is supported by the overwhelming weight of authority and by the better reasoning. We have concluded that the rule announced by the majority of the states which have passed upon the question should here be held controlling. We are in accord, in general, with the rules governing the physical examination of plaintiffs in personal injury cases as summarized in § 1385 of 3 Jones's Commentaries on Evidence (2d Ed.).

In considering the minority rule we have not overlooked the decision of the supreme court of the United States in *Union Pacific R. Co. v. Botsford*, 141 U. S. 250 (35 L. Ed. 734, 11 S. Ct. 1000). That case, however, has not been followed by the majority of state courts and it was apparently based largely on the restrictions implied in the expressly delegated powers of the federal courts provided by acts of Congress. See 3 Jones's Commentaries on Evidence (2d Ed.), §§ 1383 and 1384.

It is contended by the appellant that there was an abuse of discretion on the part of the trial court in denying his motions for a physical examination of the plaintiff by medical experts. The accident which was the basis of the action occurred in February, 1936. The original complaint was filed December 26, 1936, and an answer thereto was filed by this defendant February 4, 1937. The amended complaint, as hereinbefore stated, was filed March 2, 1937, increasing the amount asked

from $5,000 to $15,000 and incorporating additional specifications of injury, as above stated. The answer of this defendant to the amended complaint was filed March 6, 1937. The first motion to require the plaintiff to submit to a physical examination was filed by the defendants March 8, 1937, and denied by the court on the same day. On the following day the defendants orally renewed their motion to require the plaintiff to submit to a physical examination by a doctor selected by the defendants or one designated by the court. The proceedings with reference to that motion and the ruling of the court thereon have hereinabove been recounted.

No objection was made by the plaintiff on the ground that the motion was not in writing or supported by affidavits. Her objections may be summarized as follows: (1) that a motion for an examination had theretofore been denied; (2) that the plaintiff had been examined by a number of doctors whom she expected to call as witnesses; and (3) that because of the fact that she had already been examined by a number of doctors and in view of the nature of her injuries, the plaintiff refused to be examined by other doctors.

■■ The amended complaint alleged in great detail the nature and extent of plaintiff's alleged injuries, and it was therefore not necessary for the defendants to reiterate by affidavit the nature and character of such injuries. Nor was it necessary for the defendants to set out in an affidavit the changes made in the amended complaint as to the specifications of injury or the increased amount demanded in that pleading, for the reason that both the original and the amended complaint were of record in the circuit court.

■ Many of the authorities hold that the defendant in making application for a physical examination must show that a demand has been made of plaintiff for such

an examination and the request refused. The necessity of such a showing was obviated in the instant case by the statement made in open court by counsel that plaintiff had refused to submit to a requested examination.

■ The mere fact that the plaintiff is a woman did not justify the court in denying defendants' motion. In 14 R. C. L. at page 705, § 17, we find the rule well stated, thus:

"As already shown, where the inherent power of the court to order the physical examination of a party is recognized, no exception is made in favor of women. And in statutes conferring the power women are not exempted. As against the contention that a physical examination is an impertinence to which a modest woman would not consent, it has been observed that the demands of justice not infrequently occasion private inconvenience and annoyance, and that a witness is frequently required to answer questions which shock modesty and offend the sense of delicacy; and that if she has submitted to an examination by her own physicians, even of organs peculiar to female functions, it is no greater indignity to be examined by other doctors. A woman's delicacy and refinement of feeling, though of course entitling her to the most considerate and tender treatment consistent with the rights of others, cannot be permitted to stand between the defendant and a legitimate defense against her claim of a considerable sum of money."

■ Although the court might be justified in refusing the request of the defendant for such an examination where the request was not made until after a number of competent medical experts had tesified on behalf of the plaintiff, in the present instance the mere statement by plaintiff's counsel at the time the request was made that the plaintiff had theretofore been examined by some four doctors and that all or most of them would

be called as witnesses, was not a sufficient basis for the court's refusal of defendants' request.

The order requiring the litigant to submit to a physical examination should contain provision for reasonable safeguard against offending or injuring the party to be examined. If the plaintiff has any objection to being examined by the doctor suggested by the defendant, the court should designate some physician of competent skill, indifferent between the parties: 3 Jones's Commentaries on Evidence (2d Ed.), § 1387.

On the question of the designation of a physician to make the examination, it is said in 14 R. C. L. 712, § 23:

"When the examination is compulsory there is obvious propriety in the experts' being selected by the court rather than by one or both of the parties, * * * The selection of experts is a matter entirely within the discretion of the trial judge. Neither party has any right, by suggestion, motion, or otherwise to control his discretion in any degree. The court, in making the order for a physical examination, and in designating the experts to execute it, is conserving the interests of neither the defendant, nor the plaintiff, but the ends of justice; and when a competent and impartial commission is named, it is a matter of no consequence whatever that the parties, or either of them, preferred and demanded the appointment of other persons."

Other matters which may arise relating to the examination should be provided for in the order appointing the physician. It can also be provided in such order, among other things, that the examination be so conducted as to cause the litigant examined as little inconvenience as possible and not unnecessarily delay the trial of the case. The order should also provide that the expense of such examination be borne by the party requesting it.

In determining whether the trial court has abused the discretion imposed in it, in denying a motion

of this nature, every case, to a large extent, must be considered on the basis of its own peculiar facts. In view of the shortness of the interval between the filing of the amended complaint and the trial of the case, in the instance before us, the change made in the plaintiff's demand and in the nature of the specifications of injury contained in her complaint, and the further fact that the defendants were obliged to prepare and file answers to the amended complaint while preparing for trial, we are of the opinion that the application for a medical examination of plaintiff was timely: 14 R. C. L. 712, § 23; and that the trial court, because of the particular facts in this case, should have granted the motion and designated some competent physician to examine the plaintiff.

While Dr. White, a chiropractor, was on the witness stand explaining the injuries to plaintiff's sacro-iliac joint he testified that it was somewhat difficult to describe and show the effect of the injuries without using a picture, skeleton or something of that nature, and that he would prefer to use a skeleton. Thereupon counsel for the plaintiff asked permission for the witness ''to have a portion of the human skeleton to illustrate his testimony in this case''. Counsel for the defendants then stated that, ''We are going to object to any demonstration by the doctor, especially in this case where the defendants have not been allowed the privilege of making an examination themselves;'' which objection was overruled. A skeleton or part of a skeleton was produced and Dr. White explained by the use of it the injuries and effect thereof upon the plaintiff. Another expert witness called by plaintiff also made use of the same skeleton. No other objection than the one above quoted was made by the defendants in this connection.

It is now urged by the appellant that "the use of the skeleton had a gruesome effect and served to arouse sympathy for the plaintiff". The reasons advanced in the trial court by the defendants for objecting to the use of the skeleton are not seriously urged here, and even if presented here would be considered without merit. Moreover, the use of a skeleton or part of a skeleton by expert witnesses rests in the sound discretion of the trial court, whenever their use will better enable the jury to understand the testimony of such witnesses: *Chicago & A. R. Co. v. Walker*, 217 Ill. 605 (75 N. E. 520) ; *Dameron v. Ansbro*, 39 Cal. App. 289 (178 P. 874). See also, in this connection, *State v. Weston*, 155 Or. 556 (64 P. (2d) 536, 108 A. L. R. 1402), wherein the use of photographs, models, skeletons, maps, drawings, casts, etc., is exhaustively treated; and 3 Jones's Commentaries on Evidence 2576, § 1417. There was no abuse of discretion on the part of the trial court in this regard.

The next exception urged touches the qualification of Dr. White, a chiropractor, to testify as an expert witness concerning certain injuries alleged to have been sustained by the plaintiff. The record discloses that Dr. White had been practicing his profession in this state some 17 years and had been treating the plaintiff for some time. He is a graduate of Pacific Chiropractic College in Portland and he had necessarily complied with the minimum requirements of section 8610, Oregon Laws, before being admitted to practice his profession. He had also taken post-graduate work in some four other colleges, presumably chiropractic institutions. He testified that he had previously had considerable experience in treating injuries such as those that the plaintiff had sustained. Dr. Manning, a physician and surgeon, testified to substantially the same conditions and inju-

ries of the plaintiff as did Dr. White and gave substantially the same opinions concerning them.

The question as to the qualification of an expert witness is, in the first instance, one largely within the sound discretion of the trial court. According to Dr. White's testimony, he had examined and treated the plaintiff since she was injured and was familiar with injuries of the kind she had sustained. The weight to be given his testimony as an expert rested entirely with the jury. Courts have recognized in a number of instances that a chiropractic practitioner is qualified to give expert testimony as to matters within the scope of his profession and practice: *Ladlie v. American Glycerin Co.*, 115 Kans. 507 (223 P. 272); *Macon Ry. & Light Co. v. Mason*, 123 Ga. 773 (51 S. E. 569); *O'Dell v. Barrett*, 163 Md. 342 (163 Atl. 191); *Johnston v. Peairs*, 117 Cal. App. 208 (3 P. (2d) 617); *Harder v. Thrift Const. Co.*, (Mo. App.) 53 S. W. (2d) 34.

During the direct examination of Dr. White he was asked the following question: "Now, Doctor, speaking with reference to Mrs. Carnine's head injuries which you mentioned a few minutes ago, and assuming that Mrs. Carnine's testimony in regard to her condition at the time of—or immediately following the automobile accident are true, or is true, and further assuming that the external injuries which you have described and other symptoms which you have described were true and existing at the time of your examination of Mrs. Carnine, in your opinion what internal head injuries, if any, did Mrs. Carnine have at that time?" To this question the defendants objected on the ground that it was too general, that it failed to call the witness's attention to specific testimony and that it was not a proper hypothetical question. The objection now urged is that an expert's opinion must be based on facts which are stated

in the form of a hypothetical question; and the further objection is made that the question here is misleading in that it seems to have reference to the condition of Mrs. Carnine's head both before the injury and immediately following the same, although this latter objection on the ground that the question was misleading is without merit, inasmuch as it was undoubtedly understood by all concerned that the question had reference to Mrs. Carnine's testimony as to her condition immediately after the accident.

The question propounded to Dr. White was based on testimony given by him and a small part of that given by the plaintiff which was heard by Dr. White. Plaintiff's testimony as to her condition immediately following the accident was not extensive, nor does there appear to have been any conflict in it. At least, the appellant does not direct our attention to any supposed conflict.

The only Oregon authority cited by the appellant in support of his contention that expert opinion must be based on hypothetical questions in which all the facts affecting the matter or situation which is the subject of inquiry are stated is *Lehman v. Knott*, 100 Or. 59 (196 P. 476). That the rule is not so restrictive, however, is apparent from a careful reading of the opinion therein and the other decisions of this court on that subject. In *Foott v. Lindstrom & Feigenson*, 143 Or. 309, 312 (22 P. (2d) 321), it was said: "Where an expert witness, by personal knowledge and observation, is familiar with the facts on which his conclusion is based, and those are the facts which have been testified to in the cause, there is no necessity of supplying the hypothesis. 'In such an instance he supplies both the premise and conclusion:' " citing authorities. In *Latourette v. Miller*, 67 Or. 141 (135 P. 327), it was held that opinion

evidence may be based on sworn testimony of other witnesses without the necessity of recapitulation thereof in the form of a hypothetical question, when the testifying expert has heard the testimony of such other witnesses. To the same effect, see *Burdick v. Mann*, 60 N. D. 710 (236 N. W. 340, 82 A. L. R. 1443, and annotations). See also, in this connection: *Lippold v. Kidd*, 126 Or. 160, 166 (269 P. 210, 59 A. L. R. 875) ; *Heider v. Barendrick*, 149 Or. 220, 230 (39 P. (2d) 957) ; and *Cobb v. Spokane P. & S. Ry. Co.*, 150 Or. 226, 234 (44 P. (2d) 731). In view of the foregoing decisions we are of the opinion that the trial court's ruling on the objection to the question as put to Dr. White was not erroneous.

The three remaining assignments of error relate to (1) the refusal of the court to grant one of appellant's requested instructions; (2) an exception taken by appellant to an instruction given by the court; and (3) the denial of appellant's motion for a new trial. We have given careful consideration to those assignments of error and find that they are without merit.

The refusal of the trial court to grant defendants' motion to require the plaintiff to submit to a physical examination amounted to such an abuse of discretion as to necessitate that the judgment be reversed and the cause remanded for further proceedings not inconsistent with this opinion. It is so ordered.